IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | | |
|---|---|---|
| SABAL TRAIL TRANSMISSION, LLC, | * | |
| | | CASE NOS. |
| Plaintiff, | | 4:16-cv-97   4:16-cv-113 |
| | * | 4:16-cv-99   4:16-cv-114 |
| vs. | | 4:16-cv-102   4:16-cv-119 |
| | * | 4:16-cv-103   4:16-cv-121 |
| REAL ESTATE, *et al.*, | | 4:16-cv-104   4:16-cv-122 |
| | * | 4:16-cv-105   4:16-cv-123 |
| Defendants. | | 4:16-cv-107   4:16-cv-124 |
| | * | 4:16-cv-108   4:16-cv-125 |
| | | 4:16-cv-109   4:16-cv-126 |
| | * | 4:16-cv-110 |

O R D E R

Plaintiff Sabal Trail Transmission, LLC received authorization from the Federal Energy Regulatory Commission to build an interstate natural gas pipeline that will extend through Alabama, Georgia, and Florida.  To complete construction of the pipeline, Sabal Trail must acquire easements across each parcel of land along the pipeline's path.  Sabal Trail has already acquired at least 90% of the easements it needs in Georgia but has been unable to acquire the remaining necessary easements by agreement with the property owners.

Sabal Trail filed nineteen condemnation actions under the Natural Gas Act, 15 U.S.C. §§ 717 to 717z, seeking to acquire the necessary easements through eminent domain.[1]  For the most part,

---

[1] Sabal Trail initially filed thirty-two condemnation actions.  Thirteen of them have been resolved (4:16-cv-98, 4:16-cv-100, 4:16-cv-101, 4:16-cv-106, 4:16-cv-111, 4:16-cv-112, 4:16-cv-115, 4:16-cv-116, 4:16-cv-117, 4:16-cv-118, 4:16-cv-120, 4:16-cv-127, and 4:16-cv-128).  In

Sabal Trail served the property owners by personal service.  *See* Appendix A to this Order.

In each action, Sabal Trail filed a motion for partial summary judgment to establish its right to condemn easements across the affected properties and a motion for preliminary injunction to grant Sabal Trail immediate possession of the easements.  The Court consolidated the actions for a hearing on the summary judgment motions and the preliminary injunction motions.[2]  Based on the briefing of the parties and the oral argument on the motions, the Court finds that Sabal Trail's partial summary judgment motions and preliminary injunction motions should be granted.

DISCUSSION

I.  **Partial Summary Judgment Motions – Power to Condemn**

A.  Factual Background

Sabal Trail Transmission, LLC received a certificate of public convenience and necessity ("FERC Certificate") from the Federal Energy Regulatory Commission ("FERC") to build an

---

several other cases (4:16-cv-103, 4:16-cv-114, and 4:16-cv-121), the parties represented that they were close to a resolution and that a stipulation of dismissal would likely be filed soon.  To date, that has not happened, and no notice of settlement has been filed, so the Court will decide the pending motions in those cases.

[2] ECF No. 4 in 4:16-cv-00097; ECF No. 7 in 4:16-cv-00099; ECF No. 4 in 4:16-cv-00102; ECF No. 7 in 4:16-cv-00103; ECF No. 4 in 4:16-cv-00104; ECF No. 4 in 4:16-cv-00105; ECF No. 4 in 4:16-cv-00107; ECF No. 4 in 4:16-cv-00108; ECF No. 4 in 4:16-cv-00109; ECF No. 6 in 4:16-cv-00110; ECF No. 4 in 4:16-cv-00113; ECF No. 4 in 4:16-cv-00114; ECF No. 4 in 4:16-cv-00119; ECF No. 4 in 4:16-cv-00121; ECF No. 4 in 4:16-cv-00122; ECF No. 4 in 4:16-cv-00123; ECF No. 7 in 4:16-cv-00124; ECF No. 4 in 4:16-cv-00125; and ECF No. 4 in 4:16-cv-00126.

interstate natural gas pipeline that will extend approximately 516.2 miles through Alabama, Georgia, and Florida. Compl. Ex. 4, Order Issuing Certificates & Approving Abandonment 92 (Feb. 2, 2016), ECF No. 1-5 in 4:16-cv-97 [hereinafter FERC Certificate] (issuing a certificate of public convenience and necessity "authorizing Sabal Trail Transmission, LLC to construct and operate the Sabal Trail Project"); *accord* Mot. for Partial Summ. J. Ex. 2, Gonzales Decl. ¶ 10, ECF No. 4-2 in 4:16-cv-97.[3] FERC examined the need for the project, the proposed route and possible alternative routes for the project, the project's environmental impacts, land use issues, and safety measures; FERC also considered public comments it received about the proposed project. *See generally* FERC Certificate. FERC found that the Sabal Trail "project's benefits to the market will outweigh any adverse effects on other pipelines and their captive customers, and on landowners and surrounding communities" and concluded "that the public convenience and necessity requires approval of" Sabal Trail's project. FERC Certificate 28 ¶ 88. FERC also approved the path of the pipeline based on alignment sheets submitted by Sabal Trail. *See, e.g.,* FERC Certificate App. B 103

---

[3] In the nineteen pending actions, Sabal Trail filed motions and briefs that are nearly identical with regard to the common issues. Sabal Trail also filed exhibits that appear to be identical with regard to the common issues in these actions. Where it is necessary for the Court to cite Sabal Trail's motion, brief, or exhibits regarding a common issue, the Court cites the motion, brief, or exhibits filed in the first-filed action, 4:16-cv-97.

¶ 4 (noting that "authorized facility locations shall be as shown in the [environmental impact statement], as supplemented by filed alignment sheets"); *see also* Final Environmental Impact Statement § 2, Description of the Proposed Action, http://elibrary.ferc.gov/idmws/file_list.asp?accession_num=201512 18-4001 (describing facilities and explaining how to access alignment sheets); *accord id.* § 5, Conclusions and Recommendations, http://elibrary.ferc.gov/idmws/file_list.asp? accession_num=20151218-4001.

Phase I of Sabal Trail's project has a proposed in-service date of May 1, 2017. FERC Certificate 6 ¶ 20; Gonzales Decl. ¶ 10. To meet the proposed in-service date, Sabal Trail must begin construction of the pipeline by June 21, 2016. Gonzales Decl. ¶ 13. Before construction begins, Sabal Trail must complete certain pre-construction activities, and those activities need to be completed as soon as possible. *Id.*

To complete construction of the pipeline, Sabal Trail needs to acquire easements across each parcel of land along the pipeline's path. Although Sabal Trail was able to purchase easements from most of the property owners along the pipeline's path, Sabal Trail has been unable to acquire the remaining necessary easements by agreement with the property owners. Therefore, Sabal Trail seeks to acquire the remaining necessary easements by eminent domain and seeks immediate possession of

those easements so that it may undertake the pre-construction activities and then start construction.  To that end, Sabal Trail filed condemnation actions in Alabama, Georgia, and Florida, including the nineteen actions pending in this Court.

B.   Eminent Domain Proceedings Under the Natural Gas Act

The Natural Gas Act authorizes FERC to consider and approve applications to build interstate natural gas pipelines.  Once FERC finds that a proposed pipeline project "is or will be required by the present or future public convenience and necessity" and that the FERC certificate applicant "is able and willing properly to do the acts and to perform the service proposed," FERC issues the applicant a certificate of public convenience and necessity.  15 U.S.C. § 717f(e).  If a FERC certificate holder cannot acquire a necessary easement for its pipeline by contract, or if the certificate holder and the property owner cannot agree on the compensation to be paid for the easement, then the FERC certificate holder "may acquire the [easement] by the exercise of the right of eminent domain."  15 U.S.C. § 717f(h).

In eminent domain proceedings, the district court's role is to evaluate the scope of the FERC certificate and order condemnation of property as authorized by the certificate.  *E.g., Kan. Pipeline Co. v. 200 Foot by 250 Foot Piece of Land*, 210 F. Supp. 2d 1253, 1256 (D. Kan. 2002); *accord Williams Nat. Gas Co.*

*v. City of Okla. City,* 890 F.2d 255, 264 (10th Cir. 1989); *Columbia Gas Transmission Corp. v. An Easement to Construct, Operate & Maintain a 24-Inch Pipeline Across Props. in Shenandoah Cty., Va.,* No. 5:07CV04009, 2008 WL 2439889, at *2 (W.D. Va. June 9, 2008) (collecting cases). Challenges to a FERC certificate may not be brought in the district court; if a party is aggrieved by an order issued by FERC, review must be sought in the Court of Appeals. 15 U.S.C. § 717r(b).

Generally, a party may exercise the federal power of eminent domain under § 717f(h) once three requirements are met: (1) the party holds a FERC certificate authorizing a natural gas pipeline project, (2) the FERC certificate concludes that the property to be taken is necessary for the pipeline project, and (3) the party cannot acquire the easements by contract. *See, e.g., Columbia Gas Transmission, LLC v. 1.01 Acres, More or Less,* 768 F.3d 300, 304 (3d Cir. 2014), *cert. denied sub nom. Brown v. Columbia Gas Transmission, LLC,* 135 S. Ct. 2051 (2015) ("[A] certificate of public convenience and necessity gives its holder the ability to obtain automatically the necessary right of way through eminent domain, with the only open issue being the compensation the landowner defendant will receive in return for the easement.").[4]

---

[4] Several Defendants assert that Sabal Trail does not have standing to exercise eminent domain under § 717f(h) because Sabal Trail is not yet an operational natural gas company. This argument lacks merit. The eminent domain right extends to "any holder of a certificate of public convenience and necessity." 15 U.S.C. § 717f(h). Sabal Trail holds

The district courts "only have jurisdiction of cases when the amount claimed by the owner of the property to be condemned exceeds $3,000." 15 U.S.C. § 717f(h).  If there is no genuine fact dispute about whether the three statutory requirements for condemnation are met, then the Court may grant summary judgment on this issue, and the only remaining issue is what constitutes just compensation for the taking.  *E.g., Kan. Pipeline Co.*, 210 F. Supp. 2d at 1258; *accord All. Pipeline L.P. v. 2.679 Acres of Land*, 911 F. Supp. 2d 816, 824 (D.N.D. 2012).

C. Why Partial Summary Judgment Is Appropriate Here

In the nineteen condemnation actions pending before this Court, there is no dispute that Sabal Trail holds a FERC certificate.  There is no dispute that Sabal Trail offered at least $3,000 for each property but was unable to obtain the necessary easements or was unable to agree on the compensation to be paid for the easements.  And there is no serious dispute that FERC concluded that the land to be taken is necessary for the pipeline project.  As discussed above, FERC authorized the path for the pipeline project—a path that crosses Defendants'

such a certificate, and FERC found that Sabal Trail will be a "natural gas company" within the meaning of the Natural Gas Act.  FERC Certificate 3 ¶ 7.

Several Defendants also assert that Sabal Trail's condemnation actions are premature because FERC granted several parties' rehearing requests.  But the "filing of an application for rehearing . . . shall not, unless specifically ordered by the Commission, operate as a stay of the Commission's order." 15 U.S.C. § 717r(c).  Moreover, although rehearing has been granted, nothing in the present record suggests that FERC granted a stay.  Therefore, the rehearing grant does not require that the Court refrain from ruling on the pending motions.

properties.   To complete the project, Sabal Trail must acquire permanent easements and temporary construction workspace easements.   In summary, the three requirements for condemnation are met.[5]

Some Defendants argue that Sabal Trail is not entitled to summary judgment because (1) several proposed easement terms exceed the scope of the FERC Certificate, (2) Sabal Trail has not established that it cannot acquire the property by contract, and (3) Sabal Trail did not adequately describe the property interest to be taken.   None of these issues precludes partial summary judgment.

The Court notes that two Defendants presented their arguments in motions to dismiss.   *See* Graham Co. Mot. to Dismiss, ECF No. 25 in 4:16-cv-99; M. Barge-Ra'Oof Mot. to Dismiss, ECF No. 13 in 4:16-cv-119.[6]   Federal Rule of Civil Procedure 71.1(e)(2) states that a defendant with "an objection or defense to the taking must serve an answer" to the notice of

---

[5] As discussed in Appendix A to this Order, a number of Defendants did not answer the notice of condemnation or make any other filing with the Court regarding this action.   "A defendant waives all objections and defenses not stated in its answer." Fed. R. Civ. P. 71.1(e)(3). And, failure to answer "constitutes consent to the taking and to the court's authority to proceed with the action and fix the compensation." Fed. R. Civ. P. 71.1(d)(2)(A)(vi).   A defendant who does not answer may still "present evidence on the amount of compensation to be paid and may share in the award." Fed. R. Civ. P. 71.1(e)(3).
[6] Graham Company also filed an answer setting forth its objections and defenses.   Mae Ola Alston Barge-Ra'Oof, who is proceeding *pro se*, did not file an answer, though she did file a Motion to Dismiss stating her objections and defenses to the taking.   The Court construes Barge-Ra'Oof's *pro se* Motion to Dismiss as an answer.

condemnation.   "No other pleading or motion asserting an additional objection or defense is allowed."   Fed. R. Civ. P. 71.1(e)(3).   Therefore, the proper vehicle for asserting objections and defenses to a taking is the answer, not a motion to dismiss or a counterclaim.   The Court thus denies Defendants' Motions to Dismiss (ECF No. 25 in 4:16-cv-99; ECF No. 13 in 4:16-cv-119).

   1.   *Scope of the Proposed Easement Terms*

   Sabal Trail submitted proposed easement terms as an exhibit to each Complaint.   *E.g.*, Compl. Ex. 2, Proposed Easement Terms, ECF No. 1-3 in 4:16-cv-97.   Based on the Court's review, the proposed easement terms mirror proposed easement agreements that were given to Defendants during negotiations.   *Compare id. with* Mot. for Summ. J. Ex. C, Letter from Tony Dieste to Sandra Jones (Mar. 1, 2016) Attach. 1, Proposed Grant of Easement, ECF No. 4-3 at 18-19 in 4:16-cv-97.   Several Defendants argue that these proposed terms exceed the scope of the FERC Certificate because they state that Sabal Trail may relocate the pipeline or change the size of the pipeline and because they provide that Sabal Trail shall not be liable for damages it causes by keeping the right-of-way clear.

   Although Sabal Trail may certainly attempt to purchase easements broader than the scope of the FERC Certificate, Sabal Trail cannot condemn easements outside the scope of the FERC

Certificate and cannot undertake any pipeline projects that have not been approved by FERC. *E.g., Williston Basin Interstate Pipeline Co. v. An Exclusive Gas Storage Leasehold & Easement in the Cloverly Subterranean Geological Formation,* 524 F.3d 1090, 1097 (9th Cir. 2008); *Columbia Gas Transmission Corp.,* 2008 WL 2439889, at *3; *Tenn. Gas Pipeline Co. v. 104 Acres of Land More or Less*, 749 F. Supp. 427, 431-32 (D.R.I. 1990). A condition of Sabal Trail's FERC Certificate is that Sabal Trail's exercise of eminent domain "must be consistent with the[] authorized facilities and locations" set forth in the FERC Certificate. FERC Certificate 103, App. B ¶ 4. Also, Sabal Trail's "right of eminent domain . . . does not authorize it to increase the size of its natural gas pipeline/facilities to accommodate future needs or to acquire a right-of-way for a pipeline to transport a commodity other than natural gas." *Id.* Accordingly, Sabal Trail's right of condemnation is restricted to the terms of the FERC Certificate, and thus the easement terms shall be limited to those rights authorized by the FERC Certificate. This issue does not preclude partial summary judgment on Sabal Trail's right to condemn; at this stage in the litigation, the Court need not draft the final easement terms to be recorded as a Grant of Easement. The Court will address this issue when it takes up the compensation issue.

2.   *Ability to Acquire Property by Contract*

Several Defendants argue that Sabal Trail has not established that it is unable to acquire the property by contract.   These Defendants contend that Sabal Trail must engage in good faith negotiations before eminent domain proceedings may take place under § 717f(h).   Most courts that have examined this issue have concluded that good faith negotiations are not required, and the Court agrees.   *See, e.g., Mars. & Ne. Pipeline, L.L.C. v. Decoulos*, 146 F. App'x 495, 498 (1st Cir. 2005) (collecting cases finding no good faith negotiation requirement); *Guardian Pipeline, L.L.C. v. 529.42 Acres of Land*, 210 F. Supp. 2d 971, 973-74 (N.D. Ill. 2002) (noting that Natural Gas Act does not have a "specific requirement" for good faith negotiations and that the court is "unaware of any case in which condemnation has been denied or even delayed because of an alleged failure to engage in good faith negotiations").   *But see Transcon. Gas Pipe Line Corp. v. 118 Acres of Land*, 745 F. Supp. 366, 369 (E.D. La. 1990) (relying on Louisiana state law in finding that good faith negotiations are required but holding that the pipeline company had satisfied this requirement by contacting each landowner at least twice and offering an amount greater than the appraised value as determined by appraisers).   Even if good faith negotiations were required (which they are not), Sabal Trail did attempt to negotiate with the property owners by contacting them

11

at least twice and offering to pay more than Sabal Trail's appraised value of the permanent and temporary easements. *See, e.g.,* Mot. for Summ. J. Ex. 2, Norman Decl. Ex. C, Letter from Tony Dieste to Sandra Jones (Mar. 1, 2016), ECF No. 4-3 at 16-17 in 4:16-cv-97 (extending a second offer of $85,000 for easements with an appraised value of $11,791); *see also* App. B to this Order (summarizing final offers). Thus, this issue does not preclude partial summary judgment on Sabal Trail's right to condemn.

Two property owners contend that they have already agreed to grant an easement and have agreed on a price. First, Timbervest Partners Stewart II, LLC asserts that it agreed on a price for the easement but acknowledges that it did not agree to certain terms Sabal Trail sought. Def. Timbervest Partners Stewart II, LLC's Resp. to Pl.'s Mot. for Summ. J. 8-9, ECF No. 22 in 4:16-cv-103. Therefore, Sabal Trail has not been able to acquire the easement from Timbervest Partners Stewart II, LLC.[7] Second, Mae Ola Alston Barge-Ra'Oof asserts that she and seven other individuals who hold an interest in property that was part of the Estate of Richard and Bobbie Alston reached an agreement with Sabal Trail for an easement over the property. Def. Barge-Ra'Oof's Mot. to Dismiss ¶ 2, ECF No. 13 in 4:16-cv-119. But,

---

[7] At the hearing on the pending motions, Sabal Trail represented that it had reached an agreement with Timbervest Partners Stewart II, LLC and that the case would be dismissed; that has not yet happened.

according to Sabal Trail, additional individuals hold (or may hold) an interest in the property, and there is nothing in the present record establishing that Sabal Trail reached an agreement with *all* of the owners of the property.   Therefore, Sabal Trail has not been able to acquire an easement from the Estate of Richard and Bobbie Alston or its beneficiaries. This issue does not preclude partial summary judgment on Sabal Trail's right to condemn.

### 3.   Adequacy of the Property Description

A number of Defendants contend that Sabal Trail has not provided a sufficient description of the easement to be taken. Federal Rule of Civil Procedure 71.1(d)(2)(A) requires that the notice of condemnation "describe the property sufficiently to identify it" and must state "the interest to be taken."[8]   In *Southern Natural Gas Co. v. Land, Cullman County*, 197 F.3d 1368, 1375 (11th Cir. 1999) for example, there was a sufficient description because (a) the complaint for condemnation "incorporate[ed] both a legal description and a plat map showing the placement of the pipeline and relevant easements" and (b)

---

[8] Some Defendants argue that Georgia law governs the legal description requirements because the Natural Gas Act says that the "practice and procedure" in condemnation proceedings "shall conform as nearly as may be with the practice and procedure in similar action or proceeding in the courts of the State where the property is situated." 15 U.S.C. § 717f(h).   However, the Eleventh Circuit has held that Rule 71.1's predecessor, Rule 71A, supersedes the Natural Gas Act's practice and procedure clause.   *S. Nat. Gas Co. v. Land, Cullman Cty.*, 197 F.3d 1368, 1375 (11th Cir. 1999).   Based on this precedent, Rule 71.1 governs.

"the [federal land] commissioners, the parties, and the lawyers have walked the centerline of the easement from one end of the . . . property to the other, and no one had any problem locating the easement."[9]   Here, in some cases, Sabal Trail provided metes and bounds descriptions of the permanent and temporary easements and staked the easements on the property.   *See* App. B to this Order.   In other cases, where the property owners did not object to the adequacy of the description, Sabal Trail provided a legal description of the property the easements will cross and a detailed drawing showing where the permanent and temporary easements cross the property, as well as a copy of the FERC-approved alignment sheets.   *See id.*   The Court has reviewed Sabal Trail's description of each easement and is satisfied that Sabal Trail has provided a sufficient description of each easement. Thus, this issue does not preclude partial summary judgment on Sabal Trail's right to condemn.

D.   Summary

As discussed above, there is no genuine fact dispute on any of the three statutory requirements.   Sabal Trail holds a FERC certificate, the easements sought are necessary for the pipeline

---

[9]   Several Defendants argue that even if Sabal Trail did adequately describe the easements, Sabal Trail's proposed easement terms state that the easement location will not be fixed until the pipeline is installed, suggesting that Sabal Trail may attempt to move the path of the pipeline.   The Court has not adopted this proposed easement term, however, and Sabal Trail cannot relocate the pipeline without permission from FERC.

project, and Sabal Trail has been unable to acquire the necessary easements by contract.   In sum, Sabal Trail has established as a matter of law that it has a right to condemn the easements under the Natural Gas Act.   Accordingly, Sabal Trail's motions for partial summary judgment are granted.

## II.   Sabal Trail's Preliminary Injunction Motions

Sabal Trail asserts that if it is entitled to exercise eminent domain as a matter of law, then the Court should grant Sabal Trail immediate possession of the temporary and permanent easements before just compensation proceedings so that Sabal Trail can begin pre-construction and construction activities. Although the Natural Gas Act does not confer a "quick-take" right like the Declaration of Taking Act does, authority exists supporting a natural gas company's right to "obtain immediate possession through the equitable remedy of a preliminary injunction." *E. Tenn. Nat. Gas Co. v. Sage*, 361 F.3d 808, 818 (4th Cir. 2004); *accord, e.g., 1.01 Acres*, 768 F.3d at 304 (reversing district court's denial of preliminary injunction where pipeline company was entitled to summary judgment on the right of eminent domain); *All. Pipeline L.P. v. 4.360 Acres of Land, More or Less,* 746 F.3d 362, 368-69 (8th Cir. 2014) (affirming grant of motion for immediate use and possession where pipeline company was entitled to summary judgment on the right of eminent domain).   The Court is persuaded that immediate

possession should be permitted after the gas company is granted summary judgment on its right to condemn and deposits the estimated fair market value of the condemned property with the court. *See Transwestern Pipeline Co. v. 17.19 Acres of Prop. Located in Maricopa Cty.*, 550 F.3d 770, 776-77 (9th Cir. 2008) (affirming denial of immediate possession absent an order of condemnation but suggesting that immediate possession may be granted after a court grants summary judgment on the condemnation issue and the gas company deposits the estimated fair market value of the condemnation with the court).

Here, Sabal Trail seeks immediate possession through a preliminary injunction. Before a preliminary injunction may be issued, the party seeking the injunction must show that: "(1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction [is] issue[d]; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc) (per curiam).

A.  Likelihood of Success on the Merits

As discussed above, the Court finds that Sabal Trail has a right to condemn the easements. Therefore, the Court has concluded not merely that Sabal Trail is likely to succeed on the

merits but that Sabal Trail *has* succeeded on the merits of its claims; the only remaining issue is how much Sabal Trail must pay for the easements.

B.   Irreparable Injury

Sabal Trail presented evidence that Phase I of its project has a proposed in-service date of May 1, 2017.   Gonzales Decl. ¶ 10.   To meet the proposed in-service date, Sabal Trail must begin construction of the pipeline by June 21, 2016.   *Id.* ¶ 13. Before construction begins, Sabal Trail must complete certain pre-construction activities, and those activities need to be completed as soon as possible.   *Id.*   If immediate possession is not granted and construction cannot begin by June 21, Sabal Trail will incur substantial delay costs, and its proposed in-service date would be jeopardized.   *Id.* ¶¶ 22-25.   The Court finds that this evidence is sufficient to establish that Sabal Trail will suffer irreparable harm if it is not granted immediate possession of the easements.   *See 1.01 Acres*, 768 F.3d at 316 (finding irreparable harm because delay in possession would likely cause significant economic losses and potential liability concerns associated with missing the in-service deadline).

Several Defendants contend that Sabal Trail cannot establish irreparable harm because it had not, as of the time Defendants filed their briefs, complied with certain conditions in the FERC Certificate that are required before construction can begin,

including the acquisition of state water crossing licenses and easements. Defendants suggest that if Sabal Trail is unable to satisfy these conditions of the FERC Certificate, they will not be allowed to complete the project. This possibility, according to Defendants, prevents Sabal Trail from establishing that it will likely suffer irreparable harm if this Court does not grant the requested preliminary injunctive relief before those conditions are clearly satisfied. But Defendants pointed the Court to no authority that every condition of the FERC Certificate must be satisfied before the Court declares that the easements should be condemned and that preliminary construction work should begin. It would be speculation to suggest that these other conditions will not be satisfied in due course. If they are not, then Sabal Trail faces a prohibition by FERC from completing the project for failure to comply with the FERC Certificate. But that is a risk Sabal Trail is apparently willing to assume, and the Court finds that these circumstances do not diminish the irreparable harm that Sabal Trail will suffer if it is not allowed to proceed at this time. In summary, the Court concludes that Sabal Trail would suffer irreparable harm without a grant of immediate possession.

C.   Weighing the Interests

Since the Court has determined that Sabal Trail has a right to condemn the easements, the only loss to Defendants associated

with the granting of the preliminary injunctive relief is the loss of possession that "would still be disturbed, albeit at a later time, if just compensation was determined first." *Sage*, 361 F.3d at 829. Sabal Trail acknowledges that it must provide adequate security to obtain immediate possession of the easements. *See* Fed. R. Civ. P. 65(c) ("The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."); *see also Sage*, 361 F.3d at 824 (noting that a landowner "is entitled to reasonable, certain, and adequate provision for obtaining compensation before his occupancy is disturbed") (quoting *Cherokee Nation v. S. Kan. Ry. Co.*, 135 U.S. 641, 659 (1890)). As a number of courts have concluded, the harm to landowners of possession before just compensation proceedings is "slight at best" if the pipeline company deposits money or a bond with the court as a security for the immediate possession. *E.g., Sage*, 361 F.3d at 826, 829.

For each property, Sabal Trail proposes a security bond in an amount equal to twice Sabal Trail's appraised value of the Defendants' property interests to be condemned. As discussed in more detail in Appendix B, many Defendants argue that Sabal Trail's appraisal is below market value. But the Defendants

19

pointed to no evidence suggesting that security in the amount of twice the appraised value is inadequate.  Therefore, based on the present record, Sabal Trail shall provide security in the amount of twice the appraised value of Defendants' property interests. Sabal Trail may provide this security by posting security bonds with the Clerk of the Court in the amounts set forth in Appendix C to this Order.[10]  Once Sabal Trail provides adequate security for the immediate possession, any harm to the landowners will be outweighed by Sabal Trail's immediate need for possession.

D.   The Public Interest

In issuing the FERC Certificate to Sabal Trail, FERC found that the Sabal Trail "project's benefits to the market will outweigh any adverse effects on other pipelines and their captive customers, and on landowners and surrounding communities" and concluded "that the public convenience and necessity requires approval of" Sabal Trail's project.  FERC Certificate 28 ¶ 88. Therefore, FERC found that the pipeline will serve the public interest.  Sabal Trail has established that it needs immediate possession of the easements so it may meet the proposed in-service date for the pipeline.  For these reasons, the Court concludes that Sabal Trail's immediate possession of the easements is not adverse to the public interest.

---

[10] None of the Defendants objected to security in the form of a bond as opposed to a deposit with the Court.

E.    Summary

In sum, Sabal Trail is entitled to immediate possession of the easements once it posts proper security bonds with the Clerk of the Court for each condemned property.

CONCLUSION

For the reasons set forth above, the Court grants Sabal Trail's motions for partial summary judgment (ECF No. 4 in 4:16-cv-00097; ECF No. 7 in 4:16-cv-00099; ECF No. 4 in 4:16-cv-00102; ECF No. 7 in 4:16-cv-00103; ECF No. 4 in 4:16-cv-00104; ECF No. 4 in 4:16-cv-00105; ECF No. 4 in 4:16-cv-00107; ECF No. 4 in 4:16-cv-00108; ECF No. 4 in 4:16-cv-00109; ECF No. 6 in 4:16-cv-00110; ECF No. 4 in 4:16-cv-00113; ECF No. 4 in 4:16-cv-00114; ECF No. 4 in 4:16-cv-00119; ECF No. 4 in 4:16-cv-00121; ECF No. 4 in 4:16-cv-00122; ECF No. 4 in 4:16-cv-00123; ECF No. 7 in 4:16-cv-00124; ECF No. 4 in 4:16-cv-00125; ECF No. 4 in 4:16-cv-00126).  Sabal Trail has the right to condemn the easements as described in Appendix B.

The Court also grants Sabal Trail's preliminary injunction motions.  After Sabal Trail posts proper security bonds with the Clerk of the Court in the amounts set forth in Appendix C, Sabal Trail shall have immediate access to the easements as described in Appendix B for the purpose of pre-installation activities and construction of the pipeline in accordance with the FERC Certificate.

The Court denies Defendants' Motions to Dismiss (ECF No. 25 in 4:16-cv-99; ECF No. 13 in 4:16-cv-119). The Court notes Sabal Trail's objection to an exhibit attached to the Bell Defendants' response brief; the Court did not rely on the exhibit in reaching its decision, so the Motion to Strike (ECF No. 19 in 4:16-cv-113) is denied as moot.

Within twenty-one days of the date of this Order, the parties in each case shall confer and present to the Court a proposed scheduling order setting forth (1) what discovery is necessary on the compensation issue, (2) proposed discovery deadlines, and (3) any other deadlines that must be established to bring these actions to judgment.

IT IS SO ORDERED, this 10th day of June, 2016.

s/Clay D. Land
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA

## APPENDIX A: Service and Answers

### I.   4:16-cv-97 (Sandra Yarbrough Jones)

Sandra Yarbrough Jones was served with the Complaint, Notice of Condemnation, and pending motions on April 7, 2016. Decl. of Proof of Serv. – Jones, ECF No. 68-1 in 4:16-cv-97. Jones timely answered.   Jones and her attorney attended the hearing on the pending motions.

### II.  4:16-cv-99 (The Graham Company, *et al.*)[1]

The Graham Company was served with the Complaint, Notice of Condemnation, and pending motions on March 23 and 28, 2016. Decl. of Proof of Serv. – Graham Co., ECF Nos. 17-1 & 17-2 in 4:16-cv-99.   The Graham Company timely answered, and its attorney appeared at the hearing on the pending motions.

Mitchell Electric Membership Corporation was served with the Complaint, Notice of Condemnation, and pending motions on March 30, 2016.   Decl. of Proof of Serv. – Mitchell Electric, ECF Nos. 17-3 & 18-1 in 4:16-cv-99.   Mitchell Electric did not answer, so it "waive[d] all objections and defenses" it might have made to the taking.   Fed. R. Civ. P. 71.1(e)(3).

---

[1] Sabal Trail initially named Georgia Federal Bank as a Defendant but filed a motion to dismiss the bank without prejudice as unnecessarily joined, which the Court granted.   Sabal Trail also named AT&T Inc. as a Defendant, but Sabal Trail and AT&T filed a consent motion to dismiss AT&T with prejudice, and the Court granted the motion.

### III. 4:16-cv-102 (W. Lynn Lasseter)

W. Lynn Lasseter was served with the Complaint, Notice of Condemnation, and the pending motions on March 24 and 28, 2016. Decl. of Proof of Serv. – Lasseter, ECF Nos. 11-1 & 11-2 in 4:16-cv-102. Lasseter timely answered. Lasseter and his attorney attended the hearing on the pending motions.

### IV. 4:16-cv-103 (Timbervest Partners Stewart II, LLC, *et al.*)

Timbervest Partners Stewart II, LLC was served with the Complaint, Notice of Condemnation, and pending motions on March 22 and 28, 2016. Decl. of Proof of Serv. – Timbervest, ECF Nos. 14-1 & 14-2 in 4:16-cv-103. Timbervest timely answered. At the hearing on the pending motions, Sabal Trail represented that it had reached an agreement with Timbervest and that this case would be dismissed soon. To date, that has not happened, and the parties have not filed a notice of settlement.

Dixie Pipeline Company was served with the Complaint, Notice of Condemnation, and pending motions on March 22 and 28, 2016. Decl. of Proof of Serv. – Dixie Pipeline, ECF Nos. 14-5 & 14-6 in 4:16-cv-103. Dixie Pipeline's attorney appeared at the hearing on the pending motions.

Kenneth E. Slay was served with the Complaint, Notice of Condemnation, and pending motions on March 29, 2016. Decl. of Proof of Serv. – Slay, ECF Nos. 14-3 & 14-4 in 4:16-cv-103. Slay did not answer, so he "waive[d] all objections and

defenses" he might have made to the taking.   Fed. R. Civ. P. 71.1(e)(3).

## V.   4:16-cv-104 (Kenneth Gregory Isaacs)

Kenneth Gregory Isaacs was served with the Complaint, Notice of Condemnation, and pending motions on March 24 and 28, 2016.  Decl. of Proof of Serv. – Isaacs, ECF Nos. 11-1 & 11-2 in 4:16-cv-104.   Isaacs timely answered; he and his attorney attended the hearing on the pending motions.

## VI.  4:16-cv-105 (Frank H. Wingate, *et al.*)

Frank H. Wingate was served with the Complaint, Notice of Condemnation, and pending motions on March 26, 2016.  Decl. of Proof of Serv. – Wingate, ECF Nos. 11-1 & 11-2 in 4:16-cv-105. Mitchell Electric Membership Corporation was served with the Complaint, Notice of Condemnation, and pending motions on March 30, 2016.  Decl. of Proof of Serv. – Wingate, ECF Nos. 11-3 & 11-4 in 4:16-cv-105.   Neither Wingate nor Mitchell Electric filed an answer, so they "waive[d] all objections and defenses" they might have made to the taking.  Fed. R. Civ. P. 71.1(e)(3).

## VII. 4:16-cv-107 (G.B.A. Associates, LLC)

G.B.A. Associates, LLC was served with the Complaint, Notice of Condemnation, and pending motions on March 24 and 28, 2016.  Decl. of Proof of Serv. – G.B.A. Associates, ECF Nos. 11-1 & 11-2 in 4:16-cv-107.  G.B.A. Associates timely answered, and its attorney appeared at the hearing on the pending motions.

## VIII.      4:16-cv-108 (Estate of Elijah Moore, *et al.*)

There are twenty-eight Defendants in this action.  As the Court previously recounted, fourteen Defendants were served in accordance with Federal Rule of Civil Procedure 71.1(d)(3)(A), and eleven of the Defendants were properly served by publication under Federal Rule of Civil Procedure 71.1(d)(3)(B).  Order for Status Report § I, ECF No. 21 in 4:16-cv-108.  None of these Defendants filed an answer, so they "waive[d] all objections and defenses" they might have made to the taking.  Fed. R. Civ. P. 71.1(e)(3).  Lillian Moore and Alonzo Hill, Jr. attended the hearing on the pending motions.  They do not oppose the easement, but they want to make sure that they are treated fairly and receive just compensation.  None of the other Defendants attended the hearing.

The Court ordered Sabal Trail to file a status report as to the remaining three Defendants: Elijah N. Wheeler, Johnnie Coleman Wheeler, and Terry Jerome Moore.  In its status report, Sabal Trail reported that it had researched these three Defendants' addresses and attempted to serve them, but the three Defendants could not be served at the addresses Sabal Trail had for them.  *See generally* Status Report (May 25, 2016), ECF No. 23 in 4:16-cv-108.  Sabal Trail further reported that after it published a notice regarding this action in *The Camilla Enterprise*, Elijah N. Wheeler and Johnnie Coleman Wheeler

4

contacted Sabal Trail and have received the notice of condemnation and other filings via mail. Regarding Terry Moore, Sabal Trail filed a Certificate of Diligent Search certifying that it had used diligent efforts to find Terry Moore's address but was still unable to locate him. *See generally* Certificate of Diligent Search, ECF No. 24-1 in 4:16-cv-108.

Sabal Trail asks the Court to find that Elijah N. Wheeler, Johnnie Coleman Wheeler, and Terry Jerome Moore have been properly served under Rule 71.1(d)(3)(B) because both Wheelers have now received a copy of the notice of condemnation and other pleadings and because Sabal Trail published a notice regarding this action in *The Camilla Enterprise* and has now certified that it was unable to find Terry Moore's address. Technically, Rule 71.1(d)(3)(B) requires a certificate of diligent search *before* service by publication is done, presumably to prevent a plaintiff from attempting service by publication without performing the required diligent search. However, given that the three statutory requirements for condemnation are met, that the published notice did list all of the Defendants in this action, and that there is nothing in the present record to refute Sabal Trail's certification of diligent search, the Court finds that this issue should not preclude summary judgment or the preliminary injunction. The Court leaves for another day the issue of whether Sabal Trail must do more to ensure that

Defendants have actual notice of this action before compensation proceedings.

## IX.   4:16-cv-109 (Earle P. Spurlock, *et al.*)

Earle P. Spurlock was served with the Complaint, Notice of Condemnation, and pending motions on April 4, 2016.   Decl. of Proof of Serv. – Spurlock, ECF No. 12-1 in 4:16-cv-109.   John T. Phillips, III was served with the Complaint, Notice of Condemnation, and the pending motions on March 30, 2016.   Decl. of Proof of Serv. – Phillips, ECF Nos. 11-1 & 11-2 in 4:16-cv-109.   Spurlock and Phillips timely answered, and their attorney appeared at the hearing on the pending motions.

Dixie Pipeline Company was served with the Complaint, Notice of Condemnation, and pending motions on March 22 and 28, 2016.   Decl. of Proof of Serv. – Dixie Pipeline Co., ECF Nos. 11-3 & 11-4 in 4:16-cv-109.   Dixie Pipeline Co. timely answered, and its attorney attended the hearing on the pending motions.

## X.   4:16-cv-110 (O.J. Stapleton, Jr., *et al.*)

O.J. Stapleton, Jr.'s attorney accepted service of the Complaint, Notice of Condemnation, and pending motions on April 1, 2016.   Acknowledgement & Acceptance of Serv. – O.J. Stapleton, Jr., ECF No. 14-1 in 4:16-cv-109.   Stapleton timely answered, and his attorney attended the hearing on the pending motions.

Sumter Electric Membership Corporation and Bank of Terrell were served with the Complaint, Notice of Condemnation, and pending motions on March 30, 2016. Decl. of Proof of Serv. – Sumter Electric Membership Corporation, ECF Nos. 13-1 & 13-2 in 4:16-cv-109; Decl. of Proof of Serv. – Bank of Terrell, ECF Nos. 13-3 & 13-4 in 4:16-cv-109. Neither Sumter Electric Membership Corporation nor Bank of Terrell filed an answer, so they "waive[d] all objections and defenses" they might have made to the taking. Fed. R. Civ. P. 71.1(e)(3).

## XI.  4:16-cv-113 (James Edwin Bell, II, *et al.*)

James Edwin Bell, II was served with the Complaint, Notice of Condemnation, and pending motions on April 5, 2016. Decl. of Proof of Serv. – J. Bell, ECF No. 15-1 in 4:16-cv-113. Robert Adams Bell was served with the Complaint, Notice of Condemnation, and pending motions on March 31, 2016. Decl. of Proof of Serv. – R. Bell, ECF Nos. 13-1 & 13-2 in 4:16-cv-113. Both James and Robert Bell timely answered; they and their attorney attended the hearing on the pending motions.

Mitchell County was served with the Complaint, Notice of Condemnation, and pending motions on March 28, 2016. Decl. of Proof of Serv. – Mitchell County, ECF Nos. 15-2 & 15-3 in 4:16-cv-113. The Georgia Department of Revenue was served with the Complaint, Notice of Condemnation, and pending motions on March 23, 2016 and March 28, 2016. Decl. of Proof of Serv. – Ga. DOR,

ECF Nos. 12-1 & 12-2 in 4:16-cv-113.  Jim H. Andrews was served
by publication on April 13, 2016, which was the date of the
third and final publication of the notice regarding this action
in *The Camilla Enterprise.*   Copy of Published Notice of
Condemnation, ECF No. 21-1 in 4:16-cv-113.   Neither Mitchell
County, the Georgia Department of Revenue, nor Andrews filed an
answer, so they have "waive[d] all objections and defenses" they
might have made to the taking.  Fed. R. Civ. P. 71.1(e)(3).

## XII. 4:16-cv-114 (Albany Farm, LLC, *et al.*)[2]

Albany Farm, LLC was served with the Complaint, Notice of
Condemnation, and pending motions on March 23 and 29, 2016.
Decl. of Proof of Serv. – Albany Farm, ECF Nos. 11-1 & 11-2 in
4:16-cv-99.  Albany Farm timely answered, and its attorney
appeared at the hearing on the pending motions.  After the
hearing on the pending motions, Albany Farm represented that it
was close to a resolution with Sabal Trail and that a
stipulation of dismissal would be filed soon.  To date, that has
not happened, and the parties have not filed a notice of
settlement.

Dougherty County was served with the Complaint, Notice of
Condemnation, and pending motions on March 29, 2016.  Decl. of
Proof of Serv. – Dougherty Cty., ECF Nos. 11-5 & 11-6 in 4:16-

---

[2] Sabal Trail initially named American Towers, Inc. as a Defendant but
filed a motion to dismiss the company without prejudice as
unnecessarily joined, which the Court granted.

cv-114.   Dougherty County did not answer, so it "waive[d] all objections and defenses" it might have made to the taking.  Fed. R. Civ. P. 71.1(e)(3).

## XIII.    4:16-cv-119 (Estate of Richard and Bobbie Alston, *et al.*)

There are twenty-nine Defendants in this action.  As the Court previously recounted, eighteen Defendants were served in accordance with Federal Rule of Civil Procedure 71.1(d)(3)(A), and eight of the Defendants were properly served by publication under Federal Rule of Civil Procedure 71.1(d)(3)(B).  Order for Status Report § I, ECF No. 20 in 4:16-cv-119.  Other than Mae Ola Alston Barge-Ra'Oof, whose motion to dismiss has been construed as an answer, none of these Defendants filed an answer, so they "waive[d] all objections and defenses" they might have made to the taking.  Fed. R. Civ. P. 71.1(e)(3). Barge-Ra'Oof attended the hearing on the pending motions, along with her husband and another relative, Ms. Hall.  They do not oppose the easement, but they want to make sure that they are treated fairly and receive just compensation.  None of the other Defendants attended the hearing.

The Court ordered Sabal Trail to file a status report as to the remaining three Defendants: April Cannon a/k/a April Mobley, Tenesha Huckaby, and Barbara Alston Sherman.  In its status report, Sabal Trail reported that it had researched these three

Defendants' addresses and attempted to serve them, but the three
Defendants could not be served at the addresses Sabal Trail had
for them. *See generally* Status Report (May 25, 2016), ECF No.
22 in 4:16-cv-119. Sabal Trail filed a Certificate of Diligent
Search certifying that it had used diligent efforts to find
these three Defendants' addresses but was still unable to locate
them. *See generally* Certificate of Diligent Search, ECF No. 23-
1 in 4:16-cv-119.

Sabal Trail asks the Court to find that April Cannon a/k/a
April Mobley, Tenesha Huckaby, and Barbara Alston Sherman have
been properly served under Rule 71.1(d)(3)(B) because Sabal
Trail published a notice about this action in *The Dawson News*
and has now certified that it was unable to find these three
Defendants' addresses. Technically, Rule 71.1(d)(3)(B) requires
a certificate of diligent search *before* service by publication
is done, presumably to prevent a plaintiff from attempting
service by publication without performing the required diligent
search. However, given that the three statutory requirements
for condemnation are met, that the published notice did list all
of the Defendants in this action, and that there is nothing in
the present record to refute Sabal Trail's certification of
diligent search, the Court finds that this issue should not
preclude summary judgment or the preliminary injunction. The
Court leaves for another day the issue of whether Sabal Trail

10

must do more to ensure that Defendants have actual notice of this action before compensation proceedings.

## XIV. 4:16-cv-121 (Lu-Al Properties, Inc., *et al.*)[3]

Lu-Al Properties Inc.'s attorney accepted service of the Complaint, Notice of Condemnation, and pending motions on April 4, 2016.  Acknowledgement & Acceptance of Serv. – Lu-Al Props., ECF No. 12-1 in 4:16-cv-121.  Lu-Al Properties timely answered, indicating that it had reached an agreement regarding the easement but that the easement had to be approved by Georgia Land Trust, Inc.  At the hearing on the pending motions, Lu-Al Properties' attorney represented that Lu-Al had reached an agreement in principle on the easement and that that this case would be dismissed soon.  To date, no stipulation of dismissal or notice of settlement has been filed.

South Georgia Farm Credit ACA was served with the Complaint, Notice of Condemnation, and pending motions on March 28, 2016.  Decl. of Proof of Serv. – S. Ga. Farm Credit, ECF Nos. 11-5 & 11-6 in 4:16-cv-121.  South Georgia Farm Credit timely answered and does not oppose the easement.

Lucius C. Smith, II and Terrell County were served with the Complaint, Notice of Condemnation, and pending motions on March 31, 2016.  Decl. of Proof of Serv. – L. Smith, ECF Nos. 11-1 &

---

[3] Sabal Trail initially named South Georgia Natural Gas Company as a Defendant but filed a motion to dismiss the company without prejudice as unnecessarily joined.  The Court granted the motion.

11-2 in 4:16-cv-121; Decl. of Proof of Serv. – Terrell Cty., ECF Nos. 11-3 & 11-4 in 4:16-cv-121.  Georgia Land Trust, Inc. was served with the Complaint, Notice of Condemnation, and pending motions on March 29, 2016.  Decl. of Proof of Serv. – Ga. Land Trust, ECF Nos. 13-1 & 13-2 in 4:16-cv-121.  Neither Smith, Terrell County, nor Georgia Land Trust filed an answer, so they "waive[d] all objections and defenses" they might have made to the taking.  Fed. R. Civ. P. 71.1(e)(3).

## XV.  4:16-cv-122 (Thomas E. Callis, *et al.*)

Thomas E. Callis was served with the Complaint, Notice of Condemnation, and pending motions on March 23 and 26, 2016. Decl. of Proof of Serv. – T. Callis, ECF Nos. 11-1 & 11-2 in 4:16-cv-122.  William G. Callis, III was served with the Complaint, Notice of Condemnation, and pending motions on March 23 and 26, 2016.  Decl. of Proof of Serv. – W. Callis, ECF Nos. 11-3 & 11-4 in 4:16-cv-122.

The Georgia Department of Revenue was served with the Complaint, Notice of Condemnation, and pending motions on March 23, 2016 and March 28, 2016.  Decl. of Proof of Serv. – Ga. DOR, ECF Nos. 11-5 & 11-6 in 4:16-cv-122.  Terrell County was served with the Complaint, Notice of Condemnation, and pending motions on March 31, 2016.  Decl. of Proof of Serv. – Terrell Cty., ECF Nos. 11-7 & 11-8 in 4:16-cv-122.

None of these Defendants filed an answer, so they "waive[d] all objections and defenses" they might have made to the taking. Fed. R. Civ. P. 71.1(e)(3).

## XVI. 4:16-cv-123 (Mark S. Wiederkehr, *et al.*)[4]

Mark and Judith Wiederkehr were served with the Complaint, Notice of Condemnation, and pending motions on March 24 and 26, 2016 and March 26, 2016. Decl. of Proof of Serv. – M. Wiederkehr, ECF Nos. 13-1 & 13-2 in 4:16-cv-123; Decl. of Proof of Serv. – J. Wiederkehr, ECF Nos. 13-3 & 13-4 in 4:16-cv-123. The Wiederkehrs timely answered. Mr. Wiederkehr and his attorney attended the hearing on the pending motions.

Southwest Georgia Farm Credit ACA was served with the Complaint, Notice of Condemnation, and pending motions on March 28, 2016. Decl. of Proof of Serv. – Sw. Ga. Farm Credit, ECF Nos. 13-5 & 13-6 in 4:16-cv-123. The remaining Defendants (James E. Sapp, Jr., as Co-Executor of the Estate of William M. VanCise, Edith VanCise Knowles, as Co-Executor of the Estate of William M. VanCise, William M. VanCise, Jr., Margaret VanCise Shoemaker, Janet VanCise Rainey, and Ruth VanCise Sapp) were served by publication on April 7, 2016, which was the date of the third and final publication of the notice regarding this action in *The Dawson News*. Copy of Published Notice of

---

[4] Sabal Trail initially named SunTrust Bank as a Defendant but filed a motion to dismiss the bank without prejudice as unnecessarily joined. The Court granted the motion.

Condemnation, ECF No. 21-1 in 4:16-cv-123.   None of the Defendants other than the Widerkehrs filed an answer, so they "waive[d] all objections and defenses" they might have made to the taking. Fed. R. Civ. P. 71.1(e)(3).

**XVII.    4:16-cv-124 (Paul H. Stapleton, *et al.*)[5]**

Paul Stapleton's attorney accepted service of the Complaint, Notice of Condemnation, and pending motions on April 1, 2016.  Acknowledgement & Acceptance of Serv. – P. Stapleton, ECF No. 15-1 in 4:16-cv-124.   Stapleton timely answered; his attorney appeared at the hearing on the pending motions.

Larry Eugene Brightwell's widow, Belle Brightwell, was served with the Complaint, Notice of Condemnation, and the pending motions on March 28, 2016.  Decl. of Proof of Serv. – Brightwell, ECF Nos. 16-1 & 16-2 in 4:16-cv-124.   Mrs. Brightwell did not file an answer, but she did appear at the hearing on the pending motions and indicated that her husband had sold the property before he passed away.  Sabal Trail stated that Mr. Brightwell had retained an access easement across the property and represented that it would work with Mrs. Brightwell to determine whether the access easement would be impacted by the pipeline easement.

---

[5] Sabal Trail initially named Regions Bank as a Defendant but filed a motion to dismiss the bank without prejudice as unnecessarily joined. The Court granted the motion.

Bank of Terrell was served with the Complaint, Notice of Condemnation, and pending motions on March 30, 2016. Decl. of Proof of Serv. – Bank of Terrell, ECF Nos. 14-1 & 14-2 in 4:16-cv-124. Bank of Terrell did not file an answer, so it "waive[d] all objections and defenses" they might have made to the taking. Fed. R. Civ. P. 71.1(e)(3).

## XVIII.    4:16-cv-125 (*Estate of Willie and Josephine Walker, et al.*)

There are thirty-one Defendants in this action. As the Court previously recounted, seventeen Defendants were served in accordance with Federal Rule of Civil Procedure 71.1(d)(3)(A), and four of the Defendants were properly served by publication under Federal Rule of Civil Procedure 71.1(d)(3)(B). Order for Status Report § I, ECF No. 26 in 4:16-cv-125. None of these Defendants filed an answer, so they "waive[d] all objections and defenses" they might have made to the taking. Fed. R. Civ. P. 71.1(e)(3). None of these Defendants appeared at the hearing on the pending motions.

The Court ordered Sabal Trail to file a status report as to the remaining ten Defendants: Angel Silas, Bryan Battle, Candace Flannigan, Iris Davis, Kelvin Battle, Leon Walker, Michael Silas, Sebrina Davis, Senoia Davis, Sherrice Flannigan, Tanesha Battle. In its status report, Sabal Trail reported that it had researched these ten Defendants' addresses and attempted to

serve them, but the ten Defendants could not be served at the addresses Sabal Trail had for them. *See generally* Status Report (May 25, 2016), ECF No. 28 in 4:16-cv-125. Sabal Trail filed a Certificate of Diligent Search certifying that it had used diligent efforts to find these three Defendants' addresses but was still unable to locate them. *See generally* Certificate of Diligent Search, ECF No. 29-1 in 4:16-cv-125.

Sabal Trail asks the Court to find that these ten Defendants have been properly served under Rule 71.1(d)(3)(B) because Sabal Trail published a notice about this action in *The Stewart Webster Patriot Citizen* and has now certified that it was unable to find these ten Defendants' addresses. Technically, Rule 71.1(d)(3)(B) requires a certificate of diligent search *before* service by publication is done, presumably to prevent a plaintiff from attempting service by publication without performing the required diligent search. However, given that the three statutory requirements for condemnation are met, that the published notice did list all of the Defendants in this action, and that there is nothing in the present record to refute Sabal Trail's certification of diligent search, the Court finds that this issue should not preclude summary judgment or the preliminary injunction. The Court leaves for another day the issue of whether Sabal Trail must do

more to ensure that Defendants have actual notice of this action before compensation proceedings.

**XIX. 4:16-cv-126 (Brian Alan O'Brien, et al.)**

Brian Alan O'Brien was served with the Complaint, Notice of Condemnation, and pending motions on March 24 and 29, 2016. Decl. of Proof of Serv. – B. O'Brien, ECF Nos. 11-1 & 11-2 in 4:16-cv-126.   John H. O'Brien was served with the Complaint, Notice of Condemnation, and pending motions on March 26, 2016. Decl. of Proof of Serv. – J. O'Brien, ECF Nos. 11-3 & 11-4 in 4:16-cv-126.   Both O'Briens timely answered, and their attorney appeared at the hearing on the pending motions.

**APPENDIX B: Property Descriptions, Values, and Offers**

**I.   4:16-cv-97 (Sandra Yarbrough Jones)**

In this case, Sabal Trail seeks permanent and temporary easements over two tracts of land in Colquitt County, which are described in detail in the Complaint.  Compl. ¶ 4, ECF No. 1 in 4:16-cv-97.  Sabal Trail submitted maps of the permanent and temporary easements as attachments to the Complaint.  *Id.* Exs. 1-A & 1-B, ECF Nos. 1-1 & 1-2 in 4:16-cv-97.  After Jones objected to the adequacy of the description provided in the Complaint and its exhibits, Sabal Trail engaged a land surveyor to provide "plats containing metes and bounds descriptions of the precise locations of the proposed Sabal Trail easements." Brock Decl. ¶ 4, ECF No. 82-2 in 4:16-cv-97; *accord id.* Ex. 1, Jones Easement Plats, ECF No. 82-3 at 3-10 in 4:16-cv-97.  In addition, survey crews staked the easements on the property. Brock Decl. ¶ 3.  Jones did not object to the adequacy of the land surveyor's plats, and the easements granted to Sabal Trail shall conform to those plats.

Sabal Trail offered Jones $85,000.00 for the easement interests.  Norman Decl. Ex. C, Letter from Tony Dieste to Sandra Jones 2 (Mar. 1, 2016) ECF No. 4-3 at 17 in 4:16-cv-97. Sabal Trail represents that the appraised value of the easement interests is $11,791.00.  *Id.*  Jones disputes the accuracy of the appraisal, contending that it does not take into account the

diminution of value to her entire property or the value of her prize camellia bushes that would be impacted by the easements, but she did not point to any evidence on this point.

## II.  4:16-cv-99 (The Graham Company, *et al.*)

In this case, Sabal Trail seeks permanent and temporary easements over three tracts of land in Dougherty County, which are described in detail in the Complaint. Compl. ¶ 4, ECF No. 1 in 4:16-cv-99. Sabal Trail submitted maps of the permanent and temporary easements as attachments to the Complaint. *Id.* Exs. 1-A & 1-B, ECF Nos. 1-2 & 1-3 in 4:16-cv-99. After Graham Company objected to the adequacy of the description provided in the Complaint and its exhibits, Sabal Trail engaged a land surveyor to provide "plats containing metes and bounds descriptions of the precise locations of the proposed Sabal Trail easements." Brock Decl. ¶ 4, ECF No. 82-2 in 4:16-cv-97; *accord id.* Ex. 1, Graham Co. Easement Plats, ECF No. 82-3 at 12-29 in 4:16-cv-97. In addition, survey crews staked the easements on the property. Brock Decl. ¶ 3. Graham Company did not object to the adequacy of the land surveyor's plats, and the easements granted to Sabal Trail shall conform to those plats.

Sabal Trail offered Graham Company $101,300.00 for the easement interests. Norman Decl. Ex. C, Letter from James Jernigan to The Graham Co. 2 (Mar. 1, 2016) ECF No. 7-3 at 28 in 4:16-cv-99. Sabal Trail represents that the appraised value of

the easement interests is $67,600.00. *Id.* Graham Company disputes the accuracy of the appraisal, contending that it does not take into account the diminution of value to its entire property, but Graham Company did not point to any evidence on this point.

**III. 4:16-cv-102 (W. Lynn Lasseter)**

In this case, Sabal Trail seeks permanent and temporary easements over one tract of land in Colquitt County, which is described in detail in the Complaint. Compl. ¶ 4, ECF No. 1 in 4:16-cv-102. Sabal Trail submitted a map of the permanent and temporary easements as an attachment to the Complaint. *Id.* Ex. 1, ECF No. 1-2 in 4:16-cv-102. After Lasseter objected to the adequacy of the description provided in the Complaint, Sabal Trail engaged a land surveyor to provide "plats containing metes and bounds descriptions of the precise locations of the proposed Sabal Trail easements." Brock Decl. ¶ 4, ECF No. 82-2 in 4:16-cv-97; *accord id.* Ex. 1, Lasseter Easement Plats, ECF No. 82-3 at 40-44 in 4:16-cv-97. In addition, survey crews staked the easements on the property. Brock Decl. ¶ 3. Lasseter did not object to the adequacy of the land surveyor's plats, and the easements granted to Sabal Trail shall conform to those plats.

Sabal Trail offered Lasseter $145,303.00 for the easement interests. Norman Decl. Ex. C, Letter from Tony Dieste to W. Lynn Lasseter 2 (Mar. 1, 2016) ECF No. 4-3 at 13 in 4:16-cv-102.

3

Sabal Trail represents that the appraised value of the easement interests is $17,791.00.  *Id.*

## IV.  4:16-cv-103 (Timbervest Partners Stewart II, LLC, *et al.*)

In this case, Sabal Trail seeks permanent and temporary easements over two tracts of land in Stewart County, which are described in detail in the Complaint.  Compl. ¶ 4, ECF No. 1 in 4:16-cv-103.  Sabal Trail submitted a land surveyor's plats of the permanent and temporary easements as attachments to the Complaint.  *Id.* Exs. 1-A & 1-B, ECF Nos. 1-2 & 1-3 in 4:16-cv-103.  Timbervest Partners Stewart II, LLC did not object to the adequacy of the land surveyor's plats, and the easements granted to Sabal Trail shall conform to those plats.

Sabal Trail offered Timbervest Partners Stewart II, LLC $125,000.00 for the easement interests.  Norman Decl. Ex. C, Letter from James Jernigan to Timbervest Partners Stewart II, LLC 2 (Mar. 1, 2016) ECF No. 7-3 at 22 in 4:16-cv-103.  Sabal Trail represents that the appraised value of the easement interests is $25,394.00.  *Id.*

## V.  4:16-cv-104 (Kenneth Gregory Isaacs)

In this case, Sabal Trail seeks permanent and temporary easements over one tract of land in Colquitt County, which is described in detail in the Complaint.  Compl. ¶ 4, ECF No. 1 in 4:16-cv-104.  Sabal Trail submitted a map of the permanent and temporary easements as an attachment to the Complaint.  *Id.* Ex.

1, ECF No. 1-2 in 4:16-cv-104.   After Isaacs objected to the adequacy of the description provided in the Complaint and its exhibits, Sabal Trail engaged a land surveyor to provide "plats containing metes and bounds descriptions of the precise locations of the proposed Sabal Trail easements."   Brock Decl. ¶ 4, ECF No. 82-2 in 4:16-cv-97; *accord id.* Ex. 1, Isaacs Easement Plats, ECF No. 82-3 at 46-48 in 4:16-cv-97.   In addition, survey crews staked the easements on the property.   Brock Decl. ¶ 3. Isaacs did not object to the adequacy of the land surveyor's plats, and the easements granted to Sabal Trail shall conform to those plats.

Sabal Trail offered Isaacs $43,791.95 for the easement interests.   Norman Decl. Ex. C, Letter from Tony Dieste to K. Gregory Isaacs 2 (Mar. 1, 2016) ECF No. 4-3 at 13 in 4:16-cv-104.   Sabal Trail represents that the appraised value of the easement interests is $20,817.00.   *Id.*   Isaacs disputes the accuracy of the appraisal, contending that it does not take into account the diminution of value to his entire property, but he did not point to any evidence on this point.

## VI.  4:16-cv-105 (Frank H. Wingate, *et al.*)

In this case, Sabal Trail seeks permanent and temporary easements over one tract of land in Stewart County, which is described in detail in the Complaint.   Compl. ¶ 4, ECF No. 1 in 4:16-cv-105.   Sabal Trail submitted a map of the permanent and

temporary easements as an attachment to the Complaint. *Id.* Ex. 1, ECF No. 1-2 in 4:16-cv-105. Sabal Trail also submitted copies of the FERC-approved alignment sheets depicting the route of the easement. Norman Decl. ¶ 12, ECF No. 4-3 in 4:16-cv-105; *id.* Exs. A & B, ECF No. 4-3 at 8 & 10 in 4:16-cv-105. Defendants did not object to the adequacy of this description, and the easements granted to Sabal Trail shall conform to the map and the alignment sheets.

Sabal Trail offered Wingate $32,500.00 for the easement interests. Norman Decl. Ex. C, Letter from James Jernigan to Frank Wingate 2 (Mar. 1, 2016) ECF No. 4-3 at 13 in 4:16-cv-105. Sabal Trail represents that the appraised value of the easement interests is $8,974.00. *Id.*

## VII. 4:16-cv-107 (G.B.A. Associates, LLC)

In this case, Sabal Trail seeks permanent and temporary easements over one tract of land in Colquitt County, which is described in detail in the Complaint. Compl. ¶ 4, ECF No. 1 in 4:16-cv-107. Sabal Trail submitted a map of the permanent and temporary easements as an attachment to the Complaint. *Id.* Ex. 1, ECF No. 1-2 in 4:16-cv-107. After G.B.A. Associates objected to the adequacy of the description provided in the Complaint and its exhibits, Sabal Trail engaged a land surveyor to provide "plats containing metes and bounds descriptions of the precise locations of the proposed Sabal Trail easements." Brock Decl. ¶

4, ECF No. 82-2 in 4:16-cv-97; *accord id.* Ex. 1, G.B.A. Associates Easement Plats, ECF No. 82-4 at 19-22 in 4:16-cv-97. In addition, survey crews staked the easements on the property. Brock Decl. ¶ 3.   G.B.A. Associates did not object to the adequacy of the land surveyor's plats, and the easements granted to Sabal Trail shall conform to those plats.

Sabal Trail offered G.B.A. Associates $406,208.05 for the easement interests. Norman Decl. Ex. C, Letter from Tony Dieste to G.B.A. Associates 2 (Mar. 1, 2016) ECF No. 4-3 at 15 in 4:16-cv-107.  Sabal Trail represents that the appraised value of the easement interests is $203,139.00.  *Id.*   G.B.A. Associates disputes the accuracy of the appraisal, contending that it does not take into account the diminution of value to its entire property, but G.B.A. Associates did not point to any evidence on this point.

## VIII.     4:16-cv-108 (Estate of Elijah Moore, *et al.*)

In this case, Sabal Trail seeks permanent and temporary easements over one tract of land in Mitchell County, which is described in detail in the Complaint.  Compl. ¶ 4, ECF No. 1 in 4:16-cv-108.  Sabal Trail submitted a land surveyor's plat of the permanent and temporary easements as an attachment to the Complaint.  *Id.* Ex. 1, ECF No. 1-2 in 4:16-cv-108.  Sabal Trail also submitted copies of the FERC-approved alignment sheets depicting the route of the easement.  Norman Decl. ¶ 12, ECF No.

7

4-3 in 4:16-cv-108; *id.* Exs. A & B, ECF No. 4-3 at 8-9 & 11-12 in 4:16-cv-108. Defendants did not object to the adequacy of this description, and the easements granted to Sabal Trail shall conform to the map and the alignment sheets.

Sabal Trail offered Defendants $15,000.00 for the easement interests. Norman Decl. Ex. C, Letter from Tony Dieste to Alonzo Hill, Jr. 2 (Mar. 1, 2016) ECF No. 4-3 at 15 in 4:16-cv-108. Sabal Trail represents that the appraised value of the easement interests is $1,800.00. *Id.*

## IX. 4:16-cv-109 (Earle P. Spurlock, *et al.*)

In this case, Sabal Trail seeks permanent and temporary easements over one tract of land in Dougherty County, which is described in detail in the Complaint. Compl. ¶ 4, ECF No. 1 in 4:16-cv-109. Sabal Trail submitted a map of the permanent and temporary easements as an attachment to the Complaint. *Id.* Ex. 1, ECF No. 1-2 in 4:16-cv-109. After Earle Spurlock and John Phillips objected to the adequacy of the description provided in the Complaint and its exhibits, Sabal Trail engaged a land surveyor to provide "plats containing metes and bounds descriptions of the precise locations of the proposed Sabal Trail easements." Brock Decl. ¶ 4, ECF No. 82-2 in 4:16-cv-97; *accord id.* Ex. 1, Spurlock & Phillips Easement Plats, ECF No. 82-4 at 24-30 in 4:16-cv-97. In addition, survey crews staked the easements on the property. Brock Decl. ¶ 3. Spurlock and

Phillips did not object to the adequacy of the land surveyor's plats, and the easements granted to Sabal Trail shall conform to those plats.

Sabal Trail offered Spurlock and Phillips $48,000.00 for the easement interests. Norman Decl. Ex. C, Letter from James Jernigan to John T. Phillips, III 2 (Mar. 1, 2016) ECF No. 4-3 at 13 in 4:16-cv-109. Sabal Trail represents that the appraised value of the easement interests is $25,109.00. *Id.* Spurlock and Phillips dispute the accuracy of the appraisal, contending that it does not take into account the diminution of value to their entire property, but they did not point to any evidence on this point.

**X.   4:16-cv-110 (O.J. Stapleton, Jr., *et al.*)**

In this case, Sabal Trail seeks permanent and temporary easements over one tract of land in Terrell County and three tracts of land in Webster County, which are described in detail in the Complaint. Compl. ¶ 4, ECF No. 1 in 4:16-cv-110. Sabal Trail submitted maps of the permanent and temporary easements as attachments to the Complaint. *Id.* Exs. 1-A to 1-D, ECF Nos. 1-2 to 1-5 in 4:16-cv-110. After O.J. Stapleton, Jr. objected to the adequacy of the description provided in the Complaint and its exhibits, Sabal Trail engaged a land surveyor to provide "plats containing metes and bounds descriptions of the precise locations of the proposed Sabal Trail easements." Brock Decl. ¶

4, ECF No. 82-2 in 4:16-cv-97; *accord id.* Ex. 1, O.J. Stapleton Easement Plats, ECF No. 82-4 at 32-58 in 4:16-cv-97. In addition, survey crews staked the easements on the property. Brock Decl. ¶ 3. Stapleton did not object to the adequacy of the land surveyor's plats, and the easements granted to Sabal Trail shall conform to those plats.

Sabal Trail offered Stapleton $248,000.00 for the easement interests. Norman Decl. Ex. C, Letter from James Jernigan to O.J. Stapleton, Jr. 2 (Mar. 1, 2016) ECF No. 6-3 at 33 in 4:16-cv-110. Sabal Trail represents that the appraised value of the easement interests is $22,652.00. *Id.*

## XI.  4:16-cv-113 (James Edwin Bell, II, et al.)

In this case, Sabal Trail seeks permanent and temporary easements over one tract of land in Mitchell County, which is described in detail in the Complaint. Compl. ¶ 4, ECF No. 1 in 4:16-cv-113. Sabal Trail submitted a map of the permanent and temporary easements as an attachment to the Complaint. *Id.* Ex. 1, ECF No. 1-2 in 4:16-cv-113. After James Edwin Bell, II and Robert Adams Bell objected to the adequacy of the description provided in the Complaint and its exhibits, Sabal Trail engaged a land surveyor to provide "plats containing metes and bounds descriptions of the precise locations of the proposed Sabal Trail easements." Brock Decl. ¶ 4, ECF No. 82-2 in 4:16-cv-97; *accord id.* Ex. 1, Bell Easement Plats, ECF No. 82-5 at 2-6 in

4:16-cv-97.   In addition, survey crews staked the easements on the property.  Brock Decl. ¶ 3.  The Bells did not object to the adequacy of the land surveyor's plats, and the easements granted to Sabal Trail shall conform to those plats.

Sabal Trail offered the Bells $13,000.00 for the easement interests.  Norman Decl. Ex. C, Letter from Tony Dieste to James & Robert Bell 2 (Mar. 1, 2016) ECF No. 4-3 at 13 in 4:16-cv-113. Sabal Trail represents that the appraised value of the easement interests is $6,400.00.  *Id.*  The Bells dispute the accuracy of the appraisal, contending that it does not take into account the diminution of value to their entire property, but they did not point to any evidence on this point.

**XII. 4:16-cv-114 (Albany Farm, LLC, *et al.*)**

In this case, Sabal Trail seeks permanent and temporary easements over three tracts of land in Dougherty County, which are described in detail in the Complaint.  Compl. ¶ 4, ECF No. 1 in 4:16-cv-114.  Sabal Trail submitted a map of the permanent and temporary easements as an attachment to the Complaint.  *Id.* Ex. 1, ECF No. 1-2 in 4:16-cv-114.  After Albany Farm objected to the adequacy of the description provided in the Complaint and its exhibits, Sabal Trail engaged a land surveyor to provide "plats containing metes and bounds descriptions of the precise locations of the proposed Sabal Trail easements."  Brock Decl. ¶ 4, ECF No. 82-2 in 4:16-cv-97; *accord id.* Ex. 1, Albany Farm

11

Easement Plats, ECF No. 82-5 at 8-17 in 4:16-cv-97.   In addition, survey crews staked the easements on the property. Brock Decl. ¶ 3.   Albany Farm did not object to the adequacy of the land surveyor's plats, and the easements granted to Sabal Trail shall conform to those plats.

Sabal Trail offered Albany Farm $60,300.00 for the easement interests.   Norman Decl. Ex. C, Letter from James Jernigan to Albany Farm 2 (Mar. 1, 2016) ECF No. 4-3 at 18 in 4:16-cv-114. Sabal Trail represents that the appraised value of the easement interests is $28,345.00.   *Id.*

## XIII.   4:16-cv-119 (Estate of Richard and Bobbie Alston, *et al.*)

In this case, Sabal Trail seeks permanent and temporary easements over one tract of land in Terrell County, which is described in detail in the Complaint.   Compl. ¶ 4, ECF No. 1 in 4:16-cv-119.   Sabal Trail submitted a map of the permanent and temporary easements as an attachment to the Complaint.   *Id.* Ex. 1, ECF No. 1-2 in 4:16-cv-119.   Sabal Trail also submitted copies of the FERC-approved alignment sheets depicting the route of the easement.   Norman Decl. ¶ 12, ECF No. 4-3 in 4:16-cv-119; *id*. Exs. A & B, ECF No. 4-3 at 9 & 11 in 4:16-cv-119. Defendants did not object to the adequacy of this description, and the easements granted to Sabal Trail shall conform to the map and the alignment sheets.

Sabal Trail offered Defendants $9,400.00 for the easement interests. Norman Decl. Ex. C, Letter from James Jernigan to Landowners 2 (Mar. 1, 2016) ECF No. 4-3 at 14 in 4:16-cv-119. Sabal Trail represents that the appraised value of the easement interests is $6,740.00. *Id.*

## XIV. 4:16-cv-121 (Lu-Al Properties, Inc., *et al.*)

In this case, Sabal Trail seeks permanent and temporary easements over one tract of land in Terrell County, which is described in detail in the Complaint. Compl. ¶ 4, ECF No. 1 in 4:16-cv-121. Sabal Trail submitted a map of the permanent and temporary easements as an attachment to the Complaint. *Id.* Ex. 1, ECF No. 1-2 in 4:16-cv-121. Sabal Trail also submitted copies of the FERC-approved alignment sheets depicting the route of the easement. Norman Decl. ¶ 12, ECF No. 4-3 in 4:16-cv-121; *id.* Exs. A & B, ECF No. 4-3 at 8-9 & 11-12 in 4:16-cv-121. Defendants did not object to the adequacy of this description, and the easements granted to Sabal Trail shall conform to the map and the alignment sheets.

Sabal Trail offered Lu-Al Properties, Inc. $45,000.00 for the easement interests. Norman Decl. Ex. C, Letter from James Jernigan to Luke Smith 2 (Mar. 1, 2016) ECF No. 4-3 at 15 in 4:16-cv-121. Sabal Trail represents that the appraised value of the easement interests is $5,700.00. *Id.*

13

**XV.   4:16-cv-122 (Thomas E. Callis, *et al.*)**

In this case, Sabal Trail seeks permanent and temporary easements over one tract of land in Terrell County, which is described in detail in the Complaint. Compl. ¶ 4, ECF No. 1 in 4:16-cv-122. Sabal Trail submitted a map of the permanent and temporary easements as an attachment to the Complaint. *Id.* Ex. 1, ECF No. 1-2 in 4:16-cv-122. Sabal Trail also submitted copies of the FERC-approved alignment sheets depicting the route of the easement. Norman Decl. ¶ 12, ECF No. 4-3 in 4:16-cv-122; *id.* Exs. A & B, ECF No. 4-3 at 8-9 & 11-13 in 4:16-cv-122. Defendants did not object to the adequacy of this description, and the easements granted to Sabal Trail shall conform to the map and the alignment sheets.

Sabal Trail offered Thomas and William Callis $67,200.00 for the easement interests. Norman Decl. Ex. C, Letter from James Jernigan to Thomas & William Callis 2 (Mar. 1, 2016) ECF No. 4-3 at 16 in 4:16-cv-122. Sabal Trail represents that the appraised value of the easement interests is $14,564.00. *Id.*

**XVI. 4:16-cv-123 (Mark S. Wiederkehr, *et al.*)**

In this case, Sabal Trail seeks permanent and temporary easements over one tract of land in Terrell County, which is described in detail in the Complaint. Compl. ¶ 4, ECF No. 1 in 4:16-cv-123. Sabal Trail submitted a map of the permanent and temporary easements as an attachment to the Complaint. *Id.* Ex.

14

1, ECF No. 1-2 in 4:16-cv-123.   Sabal Trail also submitted copies of the FERC-approved alignment sheets depicting the route of the easement.  Norman Decl. ¶ 12, ECF No. 4-3 in 4:16-cv-123; *id.* Exs. A & B, ECF No. 4-3 at 8 & 10 in 4:16-cv-123.  Mark and Judith Wiederkehr objected to the adequacy of the description provided in the Complaint and its exhibits.   Due to safety concerns associated with pesticides that had recently been sprayed on the Wiederkehrs' pecan orchard, Sabal Trail's land surveyor could not enter the property to conduct a more detailed survey.   At the hearing, however, the Wiederkehrs' attorney acknowledged that the easement path had been staked and that Mr. Wiederkehr had worked with Sabal Trail on the location of the easement.   The easements granted to Sabal Trail shall conform to the map, alignment sheets, and staked easement path.

Sabal Trail offered the Wiederkehrs $525,000.00 for the easement interests.  Norman Decl. Ex. C, Letter from James Jernigan to Mark & Judith Wiederkehr 2 (Mar. 1, 2016) ECF No. 4-3 at 13 in 4:16-cv-123.   Sabal Trail represents that the appraised value of the easement interests is $37,884.00.   *Id.* The Wiederkehrs dispute the accuracy of the appraisal, contending that it is far below market value for the interests taken, but they did not point to any evidence on this point.

**XVII.     4:16-cv-124 (Paul H. Stapleton, *et al.*)**

In this case, Sabal Trail seeks permanent and temporary easements over two tracts of land in Terrell County and two tracts of land in Webster County, which are described in detail in the Complaint. Compl. ¶ 4, ECF No. 1 in 4:16-cv-124. Sabal Trail submitted maps of the permanent and temporary easements as attachments to the Complaint. *Id.* Exs. 1-A to 1-D, ECF Nos. 1-2 to 1-5 in 4:16-cv-124. After Paul Stapleton objected to the adequacy of the description provided in the Complaint and its exhibits, Sabal Trail engaged a land surveyor to provide "plats containing metes and bounds descriptions of the precise locations of the proposed Sabal Trail easements." Brock Decl. ¶ 4, ECF No. 82-2 in 4:16-cv-97; *accord id.* Ex. 1, Paul Stapleton Easement Plats, ECF No. 82-4 at 34-41 in 4:16-cv-97. In addition, survey crews staked the easements on the property. Brock Decl. ¶ 3. Stapleton did not object to the adequacy of the land surveyor's plats, and the easements granted to Sabal Trail shall conform to those plats.

Sabal Trail offered Stapleton $60,600.00 for the easement interests. Norman Decl. Ex. C, Letter from James Jernigan to Paul Stapleton 2 (Mar. 1, 2016) ECF No. 7-3 at 30 in 4:16-cv-124. Sabal Trail represents that the appraised value of the easement interests is $4,916.00. *Id.*

16

**XVIII.   4:16-cv-125 (Estate of Willie and Josephine Walker, *et al.*)**

In this case, Sabal Trail seeks permanent and temporary easements over one tract of land in Webster County, which is described in detail in the Complaint. Compl. ¶ 4, ECF No. 1 in 4:16-cv-125. Sabal Trail submitted a map of the permanent and temporary easements as an attachment to the Complaint. *Id.* Ex. 1, ECF No. 1-2 in 4:16-cv-125. Sabal Trail also submitted copies of the FERC-approved alignment sheets depicting the route of the easement. Norman Decl. ¶ 12, ECF No. 4-3 in 4:16-cv-125; *id.* Exs. A & B, ECF No. 4-3 at 9 & 11 in 4:16-cv-125. Defendants did not object to the adequacy of this description, and the easements granted to Sabal Trail shall conform to the map and the alignment sheets.

Sabal Trail offered Defendants $ 3,500.00 for the easement interests. Norman Decl. Ex. C, Letter from James Jernigan to Landowners 2 (Mar. 1, 2016) ECF No. 4-3 at 14 in 4:16-cv-125. Sabal Trail represents that the appraised value of the easement interests is $363.00. *Id.*

**XIX. 4:16-cv-126 (Brian Alan O'Brien, *et al.*)**

In this case, Sabal Trail seeks permanent and temporary easements over one tract of land in Webster County, which is described in detail in the Complaint. Compl. ¶ 4, ECF No. 1 in 4:16-cv-126. Sabal Trail submitted a map of the permanent and

temporary easements as an attachment to the Complaint. *Id.* Ex. 1, ECF No. 1-2 in 4:16-cv-126.   After Brian O'Brien and John O'Brien objected to the adequacy of the description provided in the Complaint and its exhibits, Sabal Trail engaged a land surveyor to provide "plats containing metes and bounds descriptions of the precise locations of the proposed Sabal Trail easements." Brock Decl. ¶ 4, ECF No. 82-2 in 4:16-cv-97; *accord id.* Ex. 1, O'Brien Easement Plats, ECF No. 82-5 at 43-49 in 4:16-cv-97.   In addition, survey crews staked the easements on the property. Brock Decl. ¶ 3.  The O'Briens did not object to the adequacy of the land surveyor's plats, and the easements granted to Sabal Trail shall conform to those plats.

Sabal Trail offered the O'Briens $57,500.00 for the easement interests.  Norman Decl. Ex. C, Letter from James Jernigan to Brian & John O'Brien 2 (Mar. 1, 2016) ECF No. 4-3 at 15 in 4:16-cv-126.  Sabal Trail represents that the appraised value of the easement interests is $7,192.00.  *Id.*

## APPENDIX C: Security for Preliminary Injunction

| Case No. | Defendants | Appraised Value | Security Required |
|---|---|---|---|
| 4:16-cv-97 | Sandra Yarbrough Jones | $11,791.00 | $23,582.00 |
| 4:16-cv-99 | Graham Co., *et al.* | $67,600.00 | $135,200.00 |
| 4:16-cv-102 | W. Lynn Lasseter | $17,791.00 | $35,582.00 |
| 4:16-cv-103 | Timbervest Partners Stewart II, LLC, *et al.* | $25,394.00 | $50,788.00 |
| 4:16-cv-104 | Kenneth Gregory Isaacs | $20,817.00 | $41,634.00 |
| 4:16-cv-105 | Frank H. Wingate, *et al.* | $8,974.00 | $17,948.00 |
| 4:16-cv-107 | G.B.A. Associates, LLC | $203,139.00 | $406,278.00 |
| 4:16-cv-108 | Estate of Elijah Moore, *et al.* | $1,800.00 | $3,600.00 |
| 4:16-cv-109 | Earle P. Spurlock, *et al.* | $25,109.00 | $50,218.00 |
| 4:16-cv-110 | O.J. Stapleton, Jr., *et al.* | $22,652.00 | $45,304.00 |
| 4:16-cv-113 | James E. Bell, II, *et al.* | $6,400.00 | $12,800.00 |
| 4:16-cv-114 | Albany Farm, LLC, *et al.* | $28,345.00 | $56,690.00 |
| 4:16-cv-119 | Estate of Richard Alston, *et al.* | $6,740.00 | $13,480.00 |
| 4:16-cv-121 | Lu-Al Properties, Inc., *et al.* | $5,700.00 | $11,400.00 |
| 4:16-cv-122 | Thomas E. Callis, *et al.* | $14,564.00 | $29,128.00 |
| 4:16-cv-123 | Mark. S. Wiederkehr, *et al.* | $37,884.00 | $75,768.00 |
| 4:16-cv-124 | Paul H. Stapleton, *et al.* | $4,916.00 | $9,832.00 |
| 4:16-cv-125 | Estate of Willie Walker, *et al.* | $363.00 | $726.00 |
| 4:16-cv-126 | Brian Alan O'Brien, *et al.* | $7,192.00 | $14,384.00 |