IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

SABAL TRAIL TRANSMISSION, LLC,      *

    Plaintiff,                      *   CASE NO.
                                   4:16-cv-097 (Jones)
vs.                                 *   4:16-cv-102 (Lasseter)
                                   4:16-cv-104 (Isaacs)
REAL ESTATE, *et al.*,              *   4:16-cv-107 (GBA Associates)
                                   4:16-cv-113 (Bell)
    Defendants.                     *

_____

O R D E R

    These five Natural Gas Act condemnation actions are ready for
trial on the issue of just compensation.  Presently pending before
the Court are the motions in limine and motions to exclude filed by
Plaintiff Sabal Trail Transmission, LLC.   Resolution of these
motions requires an understanding of the proper measure of just
compensation, so that is where the Court will begin.

I.   **Measure of Just Compensation**

    The parties do not agree on whether federal or state law
governs the measure of just compensation.   Defendants assert,
without citing any authority, that Georgia law applies to the
issue of just compensation.   Sabal Trail contends that just
compensation is a matter of federal law, but it did not cite any
binding authority on this issue.[1]

_____

[1] In support of its argument, Sabal Trail cites *United States v. An
Easement & Right-of-way Over 6.09 Acres of Land, More or Less, in
Madison Cty., Ala.*, 140 F. Supp. 3d 1218, 1232 (N.D. Ala. 2015).   In
that case, the United States filed condemnation actions for the use of

In this Circuit, "the law of the state where the condemned property is located is to be adopted as the appropriate federal rule for determining the measure of compensation when a licensee exercises the power of eminent domain pursuant to Section 21 of the Federal Power Act." *Ga. Power Co. v. Sanders*, 617 F.2d 1112, 1124 (5th Cir. 1980) (en banc).[2] Under the rationale of *Sanders*, the Court finds that Georgia law should be adopted as the federal rule to determine the measure of just compensation in this Natural Gas Act condemnation proceeding. *See Sabal Trail Transmission, LLC v. Real Estate*, No. 1:16-CV-063-MW-GRJ, 2017 WL 2783995, at *2-*6 (N.D. Fla. June 27, 2017) (providing a detailed analysis and concluding, under *Sanders*, that "state substantive law governs the compensation measure in eminent-domain condemnation proceedings" under the Natural Gas Act).

Under Georgia law, just compensation means "the fair market value of the property at the time of the taking." *Dep't of*

___

the Tennessee Valley Authority. The case does not establish that federal law governs in an action where a private company condemns an easement pursuant to authority granted by the Natural Gas Act. Sabal Trail also cites *Columbia Gas Transmission, LLC v. 252.071 Acres, More or Less, in Baltimore Cty., Md.*, No. ELH-15-3462, 2016 WL 7167979, at *3 (D. Md. Dec. 8, 2016). In that case, an out-of-circuit magistrate judge concluded that federal law applied because her circuit did not apply state law to determinations of just compensation in Natural Gas Act proceedings. It is not persuasive authority, particularly in light of *Georgia Power Co. v. Sanders*, 617 F.2d 1112, 1119 (5th Cir. 1980) (en banc).

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

*Transp. v. Mendel*, 517 S.E.2d 365, 367 (Ga. Ct. App. 1999). If "there is a partial taking of property by condemnation, just and adequate compensation is the sum of the market value of the property that is taken and the consequential damage, if any, to the property that remains, both measured as of the time of the taking." *Gwinnett Cty. v. Ascot Inv. Co.*, 726 S.E.2d 130, 132 (Ga. Ct. App. 2012). "The consequential damage to the property that remains is the difference between its fair market value before the taking and its fair market value after the taking." *Id.*

"Just compensation must be based on the value of the rights taken, without regard to the owner's personal relationship to the property taken." *Mendel*, 517 S.E.2d at 367. In general, the cost to cure damage to property caused by the taking "may be considered a factor in establishing the reduced fair market value of the remaining property after the taking." *Steele v. Dep't of Transp.*, 671 S.E.2d 275, 278 (Ga. Ct. App. 2008) (quoting *Dep't of Transp. v. Ogburn Hardware & Supply, Inc.*, 614 S.E.2d 108, 110 (Ga. Ct. App. 2005)). Although cost to cure "may be an important factor used by an appraiser in determining the value of the remainder [of property after a partial taking], it is not recoverable as a separate element of damage." *Id.*

## II.  The Burden of Proof

The parties also do not agree on which side has the burden of proof.  Defendants argue that under Georgia law, Sabal Trail as the condemnor has the burden to prove just compensation. Sabal Trail asserts that under federal law, the landowners have the burden of proof.

The federal cases generally state that in condemnation cases, the landowner has the burden to prove fair market value of the land taken, including severance damages (damages to the remaining land in a partial taking).  *See, e.g.*, *U. S. ex rel. Tenn. Valley Auth. v. Powelson*, 319 U.S. 266, 273 (1943) ("The burden of establishing the value of the lands sought to be condemned was on [the landowner].");  *United States v. Smith*, 355 F.2d 807, 809 (5th Cir. 1966) (stating that the land owners have the "burden of proving" fair market value of the land taken and severance damages).  Both *Powelson* and *Smith* were concerned chiefly with whether some of the landowners' evidence should have been excluded in determining the fair market value of the property taken, and both cases were remanded for further proceedings *without* that evidence.  The implication of these cases is clear: if the landowner contends that he is entitled to a larger just compensation award than the Government's evidence shows, the landowner must present valid evidence to prove that amount.

Georgia courts have concluded that since the condemnor must pay before taking private property for public use, the condemnor

has the burden of proving fair market value of the property taken. *Glover v. Dep't of Transp.*, 304 S.E.2d 567, 568 (Ga. Ct. 1983).[3] But that burden is met "as soon as" the condemnor introduces evidence of value. *Id.* And, if "the condemnee contends that the value or the amount of the damage is greater than is shown by the condemnor's proof and seeks a verdict for some greater amount he must introduce evidence that will itself or together with other evidence in the case support the verdict, else if a verdict is returned for an amount greater than is authorized under the condemnor's evidence it will fall because unsupported." *Id.* (quoting *Lewis v. State Highway Dep't*, 140 S.E.2d 109, 110 (Ga. Ct. App. 1964)). Nonetheless, the Georgia courts have stated that it would be error to instruct a jury that the condemnee has the burden to prove fair market value. *Id.; accord Gen. Lighting Distrib., Inc. v. Cobb Cty.*, 538 S.E.2d 807, 809 (Ga. Ct. App. 2000) ("In the usual condemnation case, where the measure of damages is the fair market value of the property, the condemnor bears the burden of proving that value, and the burden of proof does not shift to the condemnee even if the condemnee disputes the figures offered by the condemnor.").

The Court finds no actual conflict between the federal rule and the Georgia rule. Under both federal law and Georgia law, a landowner who contends that the just compensation award should be

---

[3] In contrast, if the landowner seeks business losses, the landowner has the burden of proof on that issue. *Gen. Lighting Distrib., Inc. v. Cobb Cty.*, 538 S.E.2d 807, 808 (Ga. Ct. App. 2000).

greater than what the condemnor's evidence shows has the burden to present evidence supporting the larger just compensation award. Failure to do so renders any excess jury verdict invalid as unsupported. So, even though the Georgia courts deny that landowners have a burden of proof on fair market value, landowners actually do have the burden to show fair market value in excess of the condemnor's valuation. The Court therefore plans to instruct the jury that Defendants have the burden to prove just compensation in excess of Sabal Trail's valuation evidence.

## III. Common Motion in Limine

Sabal Trail filed nearly identical motions in limine on five issues in these five actions, and Defendants filed nearly identical responses. The Court will address all of the common motions in limine together.

### A. Amounts Sabal Trail Paid Other Landowners

Sabal Trail moved to exclude evidence of how much it paid other landowners for easements along the pipeline's route. This motion is granted. "Fair market value is defined as the price that a seller who desires but is not required to sell and a buyer who desires but is not required to buy would agree is a fair price after due consideration of all the elements reasonably affecting value." *Thornton v. Dep't of Transp.*, 620 S.E.2d 621, 624 (Ga. Ct. App. 2005) (quoting *Dep't of Transp. v. Old Nat'l Inn*, 345 S.E.2d 853, 856 (Ga. Ct. App. 1986)).

Defendants argue that evidence of the amounts Sabal Trail paid other landowners before resorting to condemnation proceedings is the best evidence of the value of the easements. Defendants did not cite any condemnation cases adopting this view. The Court is not convinced that sales made under threat of condemnation proceedings are voluntary or that they accurately reflect the fair market value of the property. *See, e.g., U.S. ex rel. Tenn. Valley Auth. v. Reynolds*, 115 F.2d 294, 296 (5th Cir. 1940) ("We think it too clear to require citation of authorities, that neither the award made to [the landowner's sister] nor the amounts paid by the government for other tracts acquired by it for the project, was admissible in evidence in this proceeding[.]"). Evidence of the amounts Sabal Trail paid other landowners is excluded.

### B.    Amounts Sabal Trail Offered to Defendants

Sabal Trail moved to exclude evidence of pre-suit offers to Defendants. This motion is granted. Before Sabal Trail initiated these eminent domain actions, it made offers to purchase the easements from Defendants. Several courts have concluded that such offers are offers of compromise that must be excluded under Federal Rule of Evidence 408. Defendants agree that they should not be permitted to introduce these offers to prove or disprove the validity or amount of a disputed claim. They do ask that the evidence be allowed if it is introduced for

another purpose, as permitted under Federal Rule of Evidence 408(b). If any Defendant wishes to introduce evidence regarding the pre-suit offers from Sabal Trail, the Defendant should first raise the issue to the Court outside the presence of the jury.

### C. Evidence of Alleged Pipeline Dangers

Sabal Trail anticipates that Defendants will try to testify that they are afraid the pipeline may be dangerous, and Sabal Trail moved to exclude this testimony. This motion is granted. Some courts do permit lay witnesses to provide evidence on how fear in the marketplace affects the value of property. *See, e.g., Ryan v. Kan. Power & Light Co.*, 815 P.2d 528, 534 (Kan. 1991). *But see Dixie Textile Waste Co. v. Oglethorpe Power Corp.*, 447 S.E.2d 328, 330 (Ga. Ct. App. 1994) (affirming exclusion of testimony regarding general, public fear of electric power lines and their impact on property values because it was speculative). Even under Defendants' cases, a witness cannot use his own personal fear as a basis for testifying about fear in the marketplace. *See Ryan*, 815 P.2d at 534 ("[N]o witness . . . may use his or her personal fear as a basis for testifying about fear in the marketplace."). The Court thus excludes Defendants' testimony regarding their subjective fears about the pipeline.

D. Cost of the Pipeline Project

Sabal Trail moved to exclude evidence regarding the cost of the pipeline project. This motion is granted because the cost of the pipeline project is not relevant to the matter that the jury must decide: the measure of just compensation for the easements on Defendants' property. Defendants argue that the cost of the project is important to show that Sabal Trail's pipeline is not a government-funded project. Defendants shall not be prohibited from pointing out that Sabal Trail is a private company, but they shall not be permitted to introduce the cost of the project.

E. Other Litigation between Sabal Trail and Defendants

Sabal Trail moved to exclude evidence of other litigation between it and Defendants. This motion is granted. None of the prior litigation is relevant to the issue that the jury must decide: just compensation in these condemnation actions. Evidence of other litigation is excluded.

**IV. Motions to Exclude in the Jones Action (4:16-cv-97)**

The Jones action (4:16-cv-97) concerns two parcels of property owned by Sandra G. Yarbrough Jones: the "Farm Property" and the "House Property." The Farm Property is approximately 140 acres and includes about seventy-four acres of cultivated cropland. Sabal Trail's permanent easement on the Farm Property is 2.64 acres, and the temporary easement is 3.84 acres. The

House Property is the site of Jones's home and is approximately twenty-one acres. Sabal Trail's permanent easement on the House Property is .66 acres, and the temporary easement is .63 acres. Sabal Trail moved to prevent Jones from introducing certain evidence at trial. The Court addresses each issue in turn.

A. Loss of Future Farm Income (ECF No. 124 in 4:16-cv-97)

Jones intends to introduce evidence of anticipated crop losses to J&M Produce, LLC. Sabal Trail moved to exclude this evidence. The motion is granted.

Between 1986 and 2016, Jones's cousin Jimmy Dykes rented approximately seventy-four acres of the Farm Property and grew various crops, including cotton, peanuts, tobacco, and corn. In 2017, however, Jones did not lease the Farm Property to Dykes or to anyone else. Jones asserts that J&M Produce planned to grow vegetables on the Farm Property starting in 2017 but was delayed in converting the fields from cotton fields to produce fields because of Sabal Trail's pipeline project. Jones contends that J&M Produce will not be able to begin the vegetable farming operation until 2020 due to the pipeline project, and she believes that there may be crop losses due to the easements once the vegetable farming operation begins.

The managing partner of J&M Produce estimates that J&M Produce will lose about $5 million in income due to the pipeline project: $739,206 per season in total crop loss for two broccoli

growing seasons per year until Sabal Trail's temporary workspace is released in September 2019 and $1,087,889 in partial crop loss for the portion of the broccoli crop grown over the easement, assuming a 28% crop loss for the next thirty years.

Jones argues that she can recover business losses caused by the taking and that she should be permitted to introduce the estimate of anticipated crop losses for the vegetable farming operation for the next thirty years. Under Georgia law, a landowner may recover business losses only if there is a "total destruction" of an established business. *Dep't of Transp. v. Dixie Highway Bottle Shop, Inc.*, 265 S.E.2d 10, 10 (Ga. 1980) (per curiam). If the business "belongs to a separate lessee, the lessee may recover for business losses as an element of compensation separate from the value of the land whether the destruction of his business is total or merely partial, provided only that the loss is not remote or speculative." *Id.*; *accord Toler v. Ga. Dep't of Transp.*, 761 S.E.2d 550, 553 (Ga. Ct. App. 2014). Either way, a condemnee cannot "recover separate business loss damages for projected profits from an unexecuted business plan, even if the plan is well-developed." *Ga. Power Co. v. Jones*, 626 S.E.2d 554, 557 (Ga. Ct. App. 2006).

Here, there was not a total destruction of any established business on the Farm Property, so Jones cannot recover business losses under Georgia law. J&M Produce has not asserted any

11

interest in the property, and it has not demonstrated any business losses to an established business, so J&M Produce cannot recover business losses under Georgia law. For these reasons, Jones shall not be permitted to recover business losses and shall not be permitted to introduce the crop loss estimate prepared by the managing partner of J&M Produce.

Jones may still introduce evidence that the Farm Property was used as farmland in the past. Jones's expert may consider that fact in determining the highest and best use of the Farm Property and in rendering her opinion on the fair market value of the easement. But Jones shall not be permitted to rely on the anticipated future lost profit evidence, which is for a vegetable farming operation that has not even started yet, to establish fair market value of the Farm Property. The Court notes that Jones's expert, Jeanne Easom, does not appear to have relied on the crop loss estimate in reaching her conclusion that the total compensation for the Farm Property should be $81,000.

B. Future Farm Road Maintenance Costs (ECF No. 124 in 4:16-cv-97)

Jones seeks damages for possible future costs associated with maintaining a farm road that crosses Sabal Trail's easement on the Farm Property. Jones testified that she might at some point need to get heavy equipment across Sabal Trail's easement to harvest timber or build a cabin. She further testified that

the existing access road will have to be modified to enable heavy equipment to cross the easement. Jones does not know what modifications might be necessary or how much any of the potential modifications might cost, but she seeks $800,000 because she "figured it was worth 10,000 a year" for the next eighty years. Jones Dep. 124:12-14, 125:14-23, ECF No. 123 in 4:16-cv-97. Half of that figure is based on "stress and not being able to use the road" over the next eighty years. *Id.* at 125:21-126:4. Jones's off-the-cuff estimate of the cost for possibly doing some undetermined road maintenance at some unknown point in the future is not based on any concrete facts. It is purely speculative and shall not be admitted.

The jury shall, of course, be permitted to consider non-speculative evidence about how the easement affects Jones's ability to farm the land. And, if Jones's appraiser relied on non-speculative evidence regarding the cost to cure damage caused by the taking as a factor in determining the value of the remainder of the Farm Property, that evidence shall be permitted.

### C.  Cost of Soil Replacement (ECF No. 124 in 4:16-cv-97)

Jones also seeks damages for the cost of removing and replacing twelve inches of topsoil from the permanent and temporary easements on the Farm Property; adding fertilizer to recondition the soil; and loosening soil that was allegedly

compacted by Sabal Trail's equipment. Jones contends that the cost to cure is approximately $400,000. Sabal Trail moved to exclude this evidence of the cost to cure the topsoil on the Farm Property. This motion is granted to the extent that Jones may not recover the cost to cure as a separate element of damages.

As discussed above, the cost to cure damage to property caused by the taking "may be considered a factor in establishing the reduced fair market value of the remaining property after the taking." *Steele*, 671 S.E.2d at 278 (quoting *Ogburn Hardware*, 614 S.E.2d at 110). Thus, evidence of how the pipeline project affected the soil and Jones's ability to farm the Farm Property, including non-speculative evidence of the actual cost of necessary soil remediation, may be admitted because it is relevant to the value of the land. But because cost to cure "is not recoverable as a separate element of damage," *id.*, the jury will be instructed that it may not apply the cost of cure as the measure of consequential damages. *See Dep't of Transp. v. Morris*, 588 S.E.2d 773, 776 (Ga. Ct. App. 2003) (reversing trial court based on jury charge that "tended to mislead the jury into applying cost of cure as the measure of consequential damages").

D.   Cost of Stump Removal (ECF No. 124 in 4:16-cv-97)

Jones seeks damages associated with removing stumps of trees that were cleared from the easements on the House Property and for regrading that part of the land.  Jones got an estimate for that work on June 22, 2016, before the pipeline was built. Sabal Trail moved to exclude this estimate because Jones admits that Sabal Trail did remove at least some of the stumps and that the estimate "probably needs to be reevaluated."   Jones Dep. 222:23-25.   Accordingly, the June 22, 2016 stump removal estimate is excluded.

To the extent that Jones seeks to introduce evidence of stump removal and grading issues on the House Property that Sabal Trail did not fix, she may do so.   Evidence of any remaining tree stumps and grading issues, including non-speculative evidence of the actual cost of stump removal and regrading on the House Property, is relevant to the value of the land.  But Jones may not recover the cost to cure as a separate element of damages, so the jury will be instructed that it may not apply the cost of cure as the measure of consequential damages.

E.   Value of Removed Trees (ECF No. 124 in 4:16-cv-97)

Jones seeks to recover the replacement cost of the trees that were removed from her property for the pipeline project. Her arborist expert calculated how much it would cost to replant

the trees using the largest available transplantable nursery tree. He then added a multiplier based on trunk diameter to account for the fact that the nursery transplants are much smaller than the removed mature trees. Sabal Trail moved to exclude the arborist's estimate. This motion is granted to the extent that Jones may not recover the replacement cost of the trees as a separate element of damages.

Again, the proper measure of damages is the difference between the pre-taking fair market value and the post-taking fair market value. So here, the proper measure of damages is the difference between the fair market value of the property with the trees and the fair market value of the property without the trees.[4] The value of the trees may affect that calculation, although it is not determinative. Furthermore, to the extent that Jones is permitted to replant some of the trees, the value of the trees based on replacement cost could be relevant because the cost to cure "may be considered a factor in establishing the reduced fair market value of the remaining property after the taking," even though it "is not recoverable as a separate element of damage." *Steele*, 671 S.E.2d at 278. Based on the present record, it appears that Jones's appraisal expert did consider the value of the removed trees as a factor in

---

[4] Another way to determine just compensation in cases involving trees is to determine the value of the timber if it were cut down and sold. Jones is not pursuing this method of determining just compensation.

determining the reduced fair market value of the House Property after the taking, and the Court thus declines to exclude evidence of the value of the trees.

F.   Possible Future Damage to Camellias (ECF No. 124 in 4:16-cv-97)

Sabal Trail moved to exclude evidence of possible future damage to Jones's camellia bushes.   This motion is granted to the extent set forth below.

Jones is an avid camellia grower.   According to Jones, the trees Sabal Trail removed for the pipeline project provided her camellias with protection from wind and sun.   Jones is concerned that half of her camellia bushes might someday be damaged due to Sabal Trail's removal of trees.   Jones had a past president of the American Camellia Society appraise the camellias.   Jones testified that she wants to recover half of the appraised value to account for potential future damage.   Jones's purely speculative testimony will not be admitted.

If there is evidence that any of Jones's camellia bushes were actually damaged because of the pipeline project, then that evidence may be relevant on the difference between the fair market value of the property with those camellia bushes and the fair market value of the property without.   *See Thornton v. Dep't of Transp.*, 620 S.E.2d 621, 624 (Ga. Ct. App. 2005) ("Although evidence of the value of improvements may be

admissible as it pertains to the issue of the value of the property as improved, such evidence does not demand a finding that the market value of the property is equal to or more than the cost of improvements." (footnote omitted)). And, today's ruling would not preclude an expert from testifying about probable future damage to the camellias based on the current growing conditions if there is a reasonable likelihood that such damage will occur.

G.   Landscaping Costs (ECF No. 124 in 4:16-cv-97)

Sabal Trail moved to exclude evidence of the cost of landscaping projects that Jones wants to undertake on the House Property because of the easements. This motion is granted.

First, Jones asserts that she cannot plant new camellia bushes in her back yard, where the pipeline is, because Sabal Trail cut down the trees she needed for wind and sun protection. Therefore, Jones wishes to plant eight mature oak trees in her front yard to provide shade so that she can plant additional camellia bushes. Although the removal of the trees from Jones's back yard may have some impact on the value of the property and the jury may consider non-speculative evidence of that impact, the cost of planting mature trees on a different part of the property is not relevant because it is not a recoverable element of damages in this action. This evidence is excluded.

Second, Jones wants to install sod and an irrigation system on the permanent easement, and she obtained estimates for the cost of this project. This evidence is excluded. The proper measure of damage is the difference between the fair market value of the property as it was before the taking (easement area with woodlands) and the fair market value of the property after the taking (easement surface restored with natural vegetation, at least according to Sabal Trail). The cost of converting the previously wooded area into a lawn is not relevant.

<u>H.</u>    <u>Testimony of Jeane Easom (ECF No. 120 in 4:16-cv-97)</u>

Jones retained Jeane Easom, a certified real estate appraiser, to provide expert testimony on her two properties. Sabal Trail does not object to Easom's testimony about the Farm Property, so Easom shall be permitted to provide an expert opinion with regard to the value of the Farm Property.

Sabal Trail objects to Easom's testimony about the House Property. First, Sabal Trail objects to Easom's testimony because her "before" valuation includes the arborist expert's replacement cost of the trees that were removed from Jones's property for the pipeline project. As discussed above, Jones may not recover the replacement cost of the trees as a separate element of damages, but her expert may consider the value of the trees as a factor in determining the reduced fair market value of the House

Property after the taking.  This portion of Sabal Trail's motion to exclude is denied.

Sabal Trail also objects to Easom's testimony regarding "other damages" to the House Property of $330,000.  These damages include the cost of moving Jones's house, pool, patio, and porches to another location on her property.  But Jones made it clear that she does not have any intention of moving her house or other improvements.  Jones Dep. 256:9-13.  Thus, the $330,000 "other damages" cannot form the basis for Easom's valuation.  This evidence is excluded.

Given that the Court has excluded some of the evidence Easom relied on in reaching her valuation opinion, the Court will permit Easom to amend her report.  The amended report shall be provided to Sabal Trail by June 11, 2018.

**V.  Motion to Exclude in the Lasseter Action (4:16-cv-102)**

Defendant W. Lynn Lasseter owns 75.10 acres near Moultrie, Georgia.  Sabal Trail filed a motion to prevent Lasseter's expert, Jeanne Easom, from offering testimony based on Lasseter's plan to subdivide 34.59 acres of his property and develop a gated community because Easom did not determine whether the gated community is financially feasible.

Under Georgia law, there must be "at least a reasonable probability . . . that condemned property could be used for subdivision purposes to authorize a jury to consider subdivision

use in determining the value of land; the mere possibility of such use is not sufficient to authorize the jury to consider subdivision use in determining the value." *State Highway Dep't v. Thomas*, 128 S.E.2d 520, 522–23 (Ga. Ct. App. 1962) (finding no abuse of discretion when trial judge admitted evidence of a proposed subdivision, including testimony regarding population growth in the area and testimony regarding other nearby subdivisions). "The fact that the property is merely adaptable to a different use is not in itself a sufficient showing in law to consider such different use as a basis for compensation; it must be shown that such use of the property is so reasonably probable as to have an effect on the present value of the land." *Dep't of Transp. v. Patten Seed Co.*, 660 S.E.2d 30, 32 (Ga. Ct. App. 2008) (quoting *Ga. Transmission Corp. v. Barron*, 566 S.E.2d 363, 365 (Ga. Ct. App. 2002)).

In *Patten Seed*, the landowner sought compensation based on the potential commercial use of its land. There was evidence that although the property at issue was zoned for agricultural use, the land had 3,400 feet of frontage on a highway, the landowner was contacted frequently by developers interested in purchasing the property, the highest and best use of the property was as commercial property, the property was located beside or across from parcels that were zoned commercial, and county zoning officials believed it was highly likely that the

property would be rezoned as commercial. *Id.* at 32-33. Thus, the jury could consider the potential commercial use of the land in determining just compensation. In contrast, in *Barron*, the fact that the landowner's residential property might, at some point in the future, be rezoned for commercial use was not enough to establish a reasonable probability that the property was best suited for commercial use, particularly in light of testimony from a county official who stated that any application to rezone the property to commercial would likely be denied because of the county's long-term land use plan. *Barron*, 566 S.E.2d at 364-365.

Here, Lasseter provided Easom with an undated plat for a twelve-lot proposed subdivision on 34.59 acres of his property. Easom conducted a discounted cash flow analysis to determine the value of the subdivision lots,[5] and she conducted a comparable sales analysis of the 40.51 acres that were not part of the proposed subdivision. Sabal Trail only objects to Easom's valuation testimony about the proposed subdivision. No improvements like roads or utilities have been constructed for the proposed subdivision. Easom did not consider subdivision

_____

[5] Easom concluded that two of the lots on Lasseter's plat could not be sold because they each had an existing South Georgia Natural Gas Company easement running through the middle of the lot. She conducted a discounted cash flow analysis to determine the value of the subdivision without those two lots. Easom also determined that six of the remaining ten lots would be lost due to Sabal Trail's easement, and she conducted a discounted cash flow analysis to determine the value of the subdivision with only the four remaining lots.

development costs in reaching her opinion. And, Easom did not determine whether Lasseter's proposed subdivision was financially feasible.

In response to Sabal Trail's motion to exclude Easom, Lasseter did not point to any evidence to establish a proper foundation for Easom's testimony, such as evidence of the feasibility of the proposed gated community. The Court is unaware of any evidence in the present record suggesting that there is a reasonable probability that the 34.59 acres could be used for a subdivision. Without such evidence, the jury cannot consider subdivision use in determining Lasseter's just compensation and thus cannot consider Easom's testimony regarding the potential gated community. Given that Easom cannot testify about the potential subdivision use of the 34.59 acres, the Court will permit Easom to amend her report. The amended report shall be provided to Sabal Trail by June 11, 2018.

## VI. Motions to Exclude in the Isaacs and GBA Associates Actions (4:16-cv-104 and 4:16-cv-107)

Sabal Trail filed a motion to exclude Thomas Rowell, the valuation expert for Defendants Kenneth Gregory Isaacs and GBA Associates, LLC. Sabal Trail argues that Rowell is not qualified to give an expert opinion. Sabal Trail further argues that Rowell's opinion should be excluded as unhelpful and unreliable.

Rowell has been in the real estate business in Colquitt County for more than forty years. He graduated from the University of Georgia with a business administration degree, emphasis on real estate, and is a licensed real estate broker in Georgia and five other states. Rowell is a licensed auctioneer in Georgia and five other states, and he has served as president of the board of realtors. Therefore, even though Rowell is not a licensed real estate appraiser, the Court concludes that he is qualified to testify about the value of land in a county where he has been in the real estate business for forty years.

Turning to his opinion, Rowell provided auction assessment reports to Isaacs and GBA Associates. Those reports set forth a plan for marketing the properties via auction. Part of each auction assessment report is a "broker's price opinion," which Rowell describes as "the knowledgeable opinion of a real estate broker as to what they feel the values may be." Rowell Dep. 43:12-14, ECF No. 54 in 4:16-cv-104. It is a range of values so that the seller will "have realistic expectations with a full understanding that [the auctioneer's] opinion of value does not make up the market." *Id.* at 45:7-11. Rowell emphasized that an auction would produce market value for each property and that that the broker's price opinion is not an appraisal of the fair market value based on accepted appraisal methodologies. *Id.* at

45:23-46:9, 111:20-21 ("[W]e want to make certain that people do not interpret these as appraised values.").

As discussed above, the measure of just compensation in a partial taking case like this one is the difference between the property's "fair market value before the taking and its fair market value after the taking." *Ascot Inv. Co.*, 726 S.E.2d at 132. Rowell's auction assessment report does not offer an opinion on the fair market value of the easement because it does not offer an opinion on the fair market value of the property before Sabal Trail's taking. And, Rowell himself stated that his "broker's price opinion" is not an appraisal of the "after" fair market value. Rather, it is a range of what could possibly happen in an auction. Rowell Dep. 45:23-46:2 ("A broker's opinion is simply that. As a broker going into an auction sale, we tell our clients, this is our opinion, we may be very conservative in these values or we may be disappointing on auction day."). Given that Rowell's testimony does not address the question that the jury must decide—the fair market value of the easement—the Court is not persuaded that his testimony will assist the jury "to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Therefore, Rowell's testimony is excluded.

**VII. Motion to Exclude in the Bell Action (4:16-cv-113)**

The Bells' property has been used for farming timber. Because of Sabal Trail's easement, the Bells will no longer be able to plant trees or harvest timber from certain areas of their property. Sabal Trail anticipates that the Bells will seek to introduce evidence of lost future revenue from the sale of timber. According to the Bells' timber expert, the Bells will lose $72,270 in future revenue over the next 100 years because they will not be able to replant trees and harvest timber on Sabal Trail's easements. Sabal Trail objects to this evidence.

Under Georgia law, business losses are recoverable as a separate element of damages in special circumstances that do not exist here. A landowner may recover business losses only if there is a "total destruction" of an established business at the location. *Dep't of Transp. v. Dixie Highway Bottle Shop, Inc.*, 265 S.E.2d 10, 10 (Ga. 1980) (per curiam); *accord Dep't of Transp. v. Acree Oil Co.*, 467 S.E.2d 319, 320 (Ga. 1996). If the business "belongs to a separate lessee, the lessee may recover for business losses as an element of compensation separate from the value of the land whether the destruction of his business is total or merely partial, provided only that the loss is not remote or speculative." *Dixie Highway Bottle Shop*, 265 S.E.2d at 10; *accord Acree Oil*, 467 S.E.2d at 320; *Toler v.*

*Georgia Dep't of Transp.*, 761 S.E.2d 550, 553 (Ga. Ct. App. 2014). Either way, the property must be "unique" and the loss may not be remote or speculative. Here, there was no total destruction of any established business, and this action does not involve the taking of a leasehold interest. Thus, the Bells cannot recover business losses under Georgia law.

The Bells argue that even if they cannot seek business losses as a separate element of damages, they should be permitted to introduce evidence of the anticipated future losses as evidence of the fair market value of the easement. The fact that the Bells' property has been used to grow trees for timber harvest in the past is certainly relevant to the property's market value. Therefore, the Bells shall not be prohibited from introducing evidence of past timber production on their property. But the anticipated future lost profit evidence the Bells wish to introduce, which is for potential timber harvests over the next 100 years, is too speculative to be used in determining the fair market value of the Bells' property and shall not be admitted. The Court notes that the Bells' expert, Jeanne Easom, does not appear to have relied on the crop loss estimate in reaching her conclusion that the total compensation for the Bells' property should be $38,000.00.

CONCLUSION

Sabal Trail's motions in limine (ECF No. 124 in 4:16-cv-97; ECF No. 60 in 4:16-cv-102; ECF No. 59 in 4:16-cv-104; ECF No. 56 in 4:16-cv-107; ECF No. 60 in 4:16-cv-113) are granted to the extent set forth above. Sabal Trail's motion to exclude the testimony of Jeanne Easom in the Jones action (ECF No. 120 in 4:16-cv-97) is granted in part and denied in part. Sabal Trail's motion to exclude the testimony of Jeanne Easom in the Lasseter action (ECF No. 57 in 4:16-cv-102) is granted to the extent set forth above. Sabal Trail's motions to exclude the testimony of Thomas Rowell in Isaacs (ECF No. 47 in 4:16-cv-104) and GBA Associates (ECF No. 48 in 4:16-cv-107) are granted.

IT IS SO ORDERED, this 21st day of May, 2018.

S/Clay D. Land
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA